HERMINIA CHAPEL DE FIGUEROA y MARIO FIGUEROA DEL ROSARIO, demandantes y apelados, *v.* LA ASAMBLEA MUNICIPAL DE AÑASCO, P. R., compuesta de sus miembros CONSTANTINO SANTOS RIVERA, BRUNO SANTOS RIVERA, ADOLFO MÉNDEZ, FILOMENA VALENTÍN, JUSTO RIVERA, JUAN ROMÁN, RAMÓN RIVÉ GÓMEZ, TOMÁS LAMBERTY y FERNANDO ESTEVES GIMENO, demandada y apelante.

No. 6568.—*Sometido:* Noviembre 14, 1935. *Resuelto:* Febrero 20, 1936.

*Bolívar Pagán* y *A. García Rodríguez,* abogados de la apelante; *M. Figueroa del Rosario* y *Pedro Baigés,* abogados de los apelados.

El Juez Presidente Señor Del Toro, emitió la opinión del tribunal.

El presente es un recurso de *certiorari* establecido de acuerdo con el artículo 83 de la Ley Municipal vigente, Leyes de 1928, p. 339, solicitando de la corte que revise y anule cierta resolución de la Asamblea Municipal de Añasco.

Los peticionarios Herminia Chapel de Figueroa y Mario Figueroa del Rosario, alegaron, en resumen:

Que son mayores de edad, casados, propietarios, vecinos de Añasco y contribuyente la primera por concepto de propiedad inmueble situada en dicho municipio;

Que P. M. Alvarez inició en la Corte de Distrito de Mayagüez un pleito sobre negatoria de servidumbre e indemnización de daños y perjuicios contra el municipio de Añasco, que terminó por sentencia favorable al municipio con imposición de las costas al demandante, en marzo 10, 1930;

Que Alvarez apeló de la sentencia para ante el Tribunal Supremo y éste la confirmó en mayo 25, 1932. *Alvarez* v. *Municipio,* 43 D.P.R. 521;

Que firme la sentencia, instó el municipio el procedimiento de ley para el cobro de las costas, condenando la corte de distrito a Alvarez el 15 de julio de 1932 al pago de mil dólares por honorarios de abogado y veinte y cuatro dólares por gastos de sellos de rentas internas incurridos en el pleito, y habiendo Alvarez apelado, la Corte Suprema confirmó la

resolución de la corte de distrito en diciembre 15, 1932, 44 D.P.R. 989;

Que en febrero 6, 1933, el secretario de la corte de distrito hizo a Alvarez la notificación correspondiente para que consignara las dichas sumas de mil y veinte y cuatro dólares dentro del término de cinco días, sin que llegara a verificarse la consignación;

Que al día siguiente de notificado, Alvarez solicitó por escrito de la Asamblea Municipal de Añasco que lo exonerara del pago de las indicadas sumas, oponiéndose el demandante M. Figueroa del Rosario en su carácter de ciudadano, y vecino y contribuyente de Añasco;

Que los demandados como miembros de la asamblea adoptaron una ordenanza exonerando a Alvarez del pago de los mil dólares de honorarios gratuitamente, sin consideración o precio legal alguno en cambio;

Que la suma de mil dólares de cuyo pago fué Alvarez exonerado constituye un crédito propiedad del municipio adquirido a virtud de sentencia firme y la exoneración gratuita equivale a una donación del mismo para realizar la cual no tiene facultades la asamblea.

Termina la petición suplicando que se reclamen los documentos pertinentes de la asamblea y se declare nula su resolución.

Ordenó la corte de distrito que se diera curso al procedimiento de acuerdo con la ley. Después de la notificación de los demandados, componentes de la asamblea, aparecen en los autos los siguientes documentos: escrito de Alvarez; ordenanza de febrero 9, 1933, designando una comisión de tres asambleístas para trasladarse a San Juan y consultar con un abogado la cuestión suscitada, pagando Alvarez los gastos; ordenanza de febrero 21, 1933, nombrando al abogado Bolívar Pagán para estudiar el asunto e informar; resolución de marzo 21, 1933, exonerando a Alvarez, y carta de éste de marzo 25, 1933, aceptando la resolución.

El envío del *return* fué toda la contestación de la asamblea. El 28 de abril de 1933 ambas partes comparecieron ante la corte y le "sometieron el caso para ser resuelto con vista ·de las alegaciones y del *return*, ·... y de los alegatos escritos en los cuales se plantearían las cuestiones de derecho." En octubre 9 de 1933, la corte dictó su resolución final. Su último por cuanto y su parte dispositiva, dicen:

"POR CUANTO, examinadas las alegaciones así admitidas y el *return* radicado, resultan todas aquéllas comprobadas por éste, y consideradas y estudiadas detenidamente las cuestiones de derecho planteadas la Corte ha llegado a la conclusión de que la Asamblea Municipal de Añasco, P. R., o sea, los demandados, al realizar el acto legislativo que se impugna, o sea al aprobar la dicha resolución el día 21 de marzo de 1933, se excedieron en sus poderes y facultades que les confiere la ley, al renunciar a, condonar, donar y ceder, sin compensación alguna y en perjuicio de los contribuyentes y del interés público, el dicho crédito, propiedad municipal, para lo cual no estaban ni están autorizados.

"POR TANTO, la Corte resuelve declarar y por la presente declara con lugar la petición de *certiorari* en este caso y resuelve decretar y por la presente decreta que la dicha resolución antes transcrita, aprobada por la Asamblea Municipal de Añasco, o sea por los demandados, el día 21 de marzo de 1933, es nula y sin valor alguno, por los fundamentos antes expuestos y condena a los demandados al pago de las costas de este pleito, sin incluir en las dichas costas honorarios de abogado."

No conforme la asamblea, apeló para ante este tribunal. Señala en su alegato tres errores, cometidos a su juicio por la corte al declarar con lugar un recurso de *certiorari* que no fué promovido por una parte perjudicada; al decidir que la asamblea cedió propiedad municipal sin compensación, y al resolver que la asamblea se excedió en su jurisdicción.

Argumentando el primer señalamiento cita la apelante el artículo 83 de la Ley Municipal de 1928 y la decisión de esta Corte Suprema en *Berríos* v. *Asamblea Municipal,* 30 D.P.R. 414 y sostiene que de los autos no ·aparece que los peticionarios sean partes perjudicadas.

En la petición se alegó directamente que Herminia Chapel

de Figueroa era contribuyente por concepto de bienes inmuebles situados en el municipio de Añasco e indirectamente que también lo era su esposo el otro peticionario M. Figueroa del Rosario, y no habiendo sido negada ni contradicha la alegación, es bastante de acuerdo con la ley y la propia jurisprudencia que se invoca.

En *Berríos* v. *Asamblea Municipal,* supra, dijo esta corte interpretando el artículo 65 de la Ley Municipal de 1919, igual substancialmente al 83 de la de 1928 que ahora rige:

"Claramente que la intención de la Legislatura fué conferir jurisdicción a las cortes para revisar la actuación administrativa y legislativa que con anterioridad a la aprobación de esta ley no podía considerarse mediante *certiorari.* No se prescriben nuevas reglas para el ejercicio de esta jurisdicción adicional, una vez que se invoque debidamente. Ni puede la corte actuar a instancia de cualquier, o todo litigante importuno, quien por razones que él mejor que nadie conoce prefiere probar la validez de una ordenanza municipal, sino solamente a instancia de 'parte perjudicada.' La ley no invalida aquellas reglas y principios generales que sirven de norma a las cortes aquí, como en otras partes, en el ejercicio de una sana discreción sobre si debe o no expedirse el auto.

"Para los fines de esta opinión, sin embargo, puede admitirse que es bastante amplio el texto del estatuto para comprender en un caso adecuado, si no en la mayoría de los mismos, a cualquier contribuyente que no ha renunciado o perdido de otro modo el derecho inherente a tal condición legal *(status).*"

Los contribuyentes de un municipio que son los que satisfacen los gastos del gobierno municipal, tienen un claro interés en que los bienes de la comunidad sean debidamente administrados y conservados y en que no se disponga gratuitamente de ellos.

Además aunque ese interés no se invoque expresamente, surge de lo alegado que no sólo como contribuyentes son partes interesadas en este caso los esposos peticionarios, si que uno de ellos, el marido, fué el abogado que defendió al municipio en el caso en que se le concedieron los honorarios a cuyo cobro renunció la asamblea.

El primer error no existe. Procederemos a estudiar conjuntamente el segundo y el tercero.

██ Los municipios en esta Isla son corporaciones políticas y jurídicas con facultades para adquirir, poseer, administrar y gobernar propiedades así como para enajenarlas o gravarlas con sujeción a las disposiciones de la ley. Sus poderes, legislativos y administrativos, son amplios y están detalladamente especificados y regulados por la ley. Actúan por medio de una Asamblea Municipal y una Junta Administrativa. Son gobiernos locales de ley de trascendental importancia para la vida social y económica del pueblo. Fueron creados y deben funcionar para el bien de la comunidad. Los ciudadanos que los forman no pueden actuar arbitrariamente sino con sujeción a la ley. De ahí que sus actos puedan ser impugnados y sus decisiones revisadas y anuladas en propios casos por los tribunales de justicia.

Una sentencia firme favorable al municipio consagrando su derecho a cobrar de determinada persona una cierta cantidad de dinero, tal como la de que aquí se trata por virtud de la cual venía P. M. Alvarez obligado a satisfacer al Municipio de Añasco la suma de mil dólares, es una propiedad (artículos 252, 258 y 280 del Código Civil, ed. 1930; 50 C. J. 729, 759, 763 y 764) de la cual no puede una asamblea disponer gratuitamente, sin consideración legal. Hemos examinado la ley y la jurisprudencia y no hemos podido encontrar en ellas algo en que pueda apoyarse una disposición gratuita, sin consideración legal alguna, de la propiedad del municipio por parte de su asamblea.

Se ha insinuado que como de acuerdo con lo dispuesto en el artículo 566 del Código Civil (ed. 1930) a saber: "Podrán hacer donación todos los que puedan contratar y disponer de sus bienes", los municipios de Puerto Rico que tienen poder para contratar y disponer de sus bienes, pueden donarlos también libremente.

El precepto es general. Comentando otro igual contenido

en el artículo 624 del Código Civil Español, dice Manresa: "Para hacer donación, exige el artículo 624: 1º., capacidad para contratar; 2º., capacidad para disponer de sus bienes."

Se refiere entonces a los menores y otras personas incapacitadas y en relación con los ayuntamientos dice:

"Pueden donar la Iglesia y las Corporaciones religiosas; pueden donar los Ayuntamientos y Diputaciones provinciales, si bien sujetándose a las formalidades legales para toda enajenación. Estas formalidades, unidas al deber que tienen dichos Ayuntamientos y Diputaciones de cuidar y conservar los bienes y derechos cuya administración les está encomendada, hará, no obstante, difícil en la práctica la realización de ese derecho (véase la sentencia de 23 de junio de 1885)." 5. Manresa. Comentarios al Código Civil, pág. 93.

La ley municipal de 1878 disponía en su artículo 81 que las enajenaciones y permutas de los bienes municipales se acomodarán a las reglas siguientes:

"1ª. Los terrenos sobrantes de la vía pública y concedidos al dominio particular, y los efectos inútiles, pueden ser vendidos exclusivamente por el Ayuntamiento.

"2ª. Los contratos relativos a los edificios municipales inútiles para el servicio a que estaban destinados, y créditos particulares a favor del pueblo, necesitan la aprobación del Gobernador, oyendo a la Comisión provincial.

"3ª. Es necesaria la aprobación del Gobernador, previo informe de la Comisión provincial, para todos los contratos relativos a los demás bienes inmuebles y derechos reales del Municipio."

Y la ley municipal de 1896 que regía al operarse el cambio de soberanía, contiene la siguiente disposición:

"Art. 89. Las enajenaciones y permutas de los bienes municipales se acomodarán a las reglas siguientes:

"1ª. Los terrenos sobrantes de la vía pública y concedidos al dominio particular, y los efectos inútiles, pueden ser vendidos exclusivamente por el Ayuntamiento.

"2ª. Los contratos relativos a los edificios municipales inútiles para el servicio a que estaban destinados y créditos particulares a favor del pueblo, así como también todos los contratos relativos a los demás bienes inmuebles y derechos reales del Municipio, necesitan la aprobación de la Diputación provincial.

"3ª. La misma aprobación es necesaria para la adquisición de bienes inmuebles y derechos reales por los Ayuntamientos, aunque sea a título gratuito y para verificar arrendamientos por más de seis años que hayan de ser inscritos en el Registro de la propiedad.

"Los Ayuntamientos no pueden de ningún modo hacer cesiones gratuitas de terrenos del común ni de otra clase de terrenos o derechos pertenecientes al Municipio, a no ser con la aprobación expresada en los dos párrafos anteriores para obras o servicios de que haya de resultar utilidad evidente a los intereses municipales.

"Todos los contratos que celebren los Ayuntamientos para toda clase de servicios, compra, obras, ventas y arrendamientos, y en general todos aquéllos que hayan de producir gastos o ingresos en los fondos municipales, se sujetarán a las prescripciones del Real decreto de 4 de enero de 1883 sobre contratos administrativos.''

Puede verse, pues, que la idea de una libre disposición gratuita de sus bienes, esto es, a quienes les plazca o a quienes estimen procedente, por parte de los municipios, no sólo no encuentra apoyo en las leyes municipales antiguas, si que la de 1896 expresamente la prohibe, necesitándose en los casos permitidos la aprobación de la Diputación Provincial.

En marzo de 1902 la Legislatura de Puerto Rico aprobó una nueva ley municipal. Interpretándola, en el caso de *Patrón et al.* v. *Municipio de San Juan,* 11 D.P.R. 391, sentó esta corte la siguiente doctrina:

"Las facultades que tienen las municipalidades, como corporaciones, están enumeradas completamente en las secciones 602 a 615, inclusive, de los Estatutos Revisados de Puerto Rico, y de ellas no resulta que las municipalidades tengan autoridad alguna para ordenar que se haga un censo de la población de una ciudad.

"Las corporaciones municipales son creadas por estatutos, y sólo pueden ejercer aquellas facultades que les han sido conferidas por decretos legislativos; no tienen facultades inherentes o tácitas, que sólo corresponden a los Estados, que las ejercen por medio de sus respectivas Legislaturas.

"La enmienda décima a la Constitución de los Estados Unidos no tiene aplicación alguna a las facultades conferidas por la ley a las corporaciones municipales.''

Desde entonces ha venido aplicándose a la interpretación

de las leyes municipales puertorriqueñas la jurisprudencia general establecida por los tribunales del continente, considerando los municipios como corporaciones creadas por la legislatura para los fines especificados en la ley de su creación y en aquellas otras decretadas en relación con los mismos. Y es abundante la jurisprudencia establecida por dichos tribunales que niega a los municipios la facultad de disponer gratuitamente de sus bienes.

Así, en el caso de *Agnew* v. *Brall*, 124 Ill. 314, 315, se resolvió que: "Es una proposición plena de ley que se tiene bien entendida, que en el desempeño de sus deberes, el concejo de una municipalidad puede actuar dentro de los límites prescritos por su carta municipal, y que si excede los poderes conferidos por dicha carta, tales actos son nulos. Las municipalidades no tienen poder para disponer o donar los fondos o propiedad de la corporación, porque toda propiedad dentro de su control perteneciente a la corporación debe ser honestamente aplicada a los usos y propósitos especificados en el acta de incorporación. El concejo de la ciudad no tiene poder para vender o disponer en alguna forma de la propiedad de la corporación sin causa, y en nuestra opinión no tiene derecho a dispensar del pago una obligación que pueda tener contra partes que son solventes y responsables, cuando no existe controversia con respecto a la validez y efecto obligatorio de la deuda."

Y en el de *Tedder* v. *Walker*, 89 S. E. 841, la Corte Suprema de Georgia dijo: "La defensa urgida contra el pago del pagaré es que la municipalidad de Norcross ha renunciado a la deuda evidenciada por el pagaré. . . . La municipalidad por ordenanza intentó relevar de responsabilidad al firmante del pagaré. Esto en efecto constituye una donación de un derecho de acción. El dinero representado por dicho derecho de acción era una propiedad pública, la propiedad de la municipalidad que no tenía poder para donarla."

"El poder discrecional de usar y disponer," resolvió la Corte Suprema de South Carolina, "no incluye la autoridad

de donar propiedad municipal para un uso estrictamente privado, por la obvia razón de que un traspaso o renuncia de tal propiedad por la municipalidad para el dominio privado, sin recibir en retorno alguna causa de razonable y equivalente valor, montaría a un quebrantamiento palpable del *trust* en virtud del cual se retiene la propiedad. *Haesloop* v. *City Council,* supra, 43 C. J. 1341." *Green* v. *City of Rock Hill,* 147 S. E. 356.

De Corpus Juris tomamos lo que sigue: "Se ha dicho que las corporaciones municipales poseen toda propiedad en su capacidad fiduciaria, y que no tienen el poder para disponer de las mismas que poseen los dueños privados. Todos sus poderes son poseídos en confianza (*in trust*) para el uso público, y la validez de su ejercicio depende generalmente de los fines para que se le utilice. Y a este respecto debe observarse el doble carácter de la corporación y sus funciones, es decir, gubernamental y municipal. Los bienes poseídos por la corporación para fines estrictamente gubernamentales pueden ser vendidos o enajenados solamente mediante autoridad legislativa expresa—que, sin embargo, es a veces otorgada—en ausencia de restricción constitucional. Más la propiedad adquirida y poseída para fines municipales generales está sujeta a su facultad discrecional de usar y disponer de la misma al no ser necesitada para fines municipales. Empero, esto no incluye la facultad de donarla o de disponer de ella gratuitamente." 43 Corpus Juris, pág. 1340, sec. 2098.

Es cierto que los municipios acogen por ejemplo a los enfermos pobres en sus hospitales y a los niños y a los ancianos desamparados en sus asilos gratuitamente y abren sus parques, sus escuelas, sus bibliotecas y sus museos libremente a la comunidad. Pero al actuar así, al donar de tal modo su propiedad gratuitamente, están cumpliendo los fines específicos de su creación. Y en tales fines no cabe comprender en verdad una donación gratuita a una persona particular de la naturaleza de la que los peticionarios sos-

tienen y la corte sentenciadora concluyó que se hizo en este caso.

██ La confirmación o la revocación de la sentencia apelada dependen, pues, de si aquí la asamblea dispuso gratuitamente o mediante consideración legal de la propiedad de que se trata.

Lo afirmado por los peticionarios en cuanto a la gratuidad de la exoneración ¿fué contradicho por el *return?* Examinemos éste a los efectos de contestar en justicia la pregunta.

Ya indicamos los documentos que contiene. Lo pedido por Alvarez en su carta de febrero 6, 1933, fué:

".... tengo el honor de solicitar de Uds. dicten una ordenanza dando por terminado el pleito entablado por mí contra el Municipio de Añasco por negatoria de servidumbre de la tubería del acueducto y del establecimiento de la represa en los terrenos que fueron de mi propiedad, previo el pago de los gastos que haya incurrido este municipio en la compra de sellos, y además que se me conceda gratuita el agua que consumo en mi casa habitación, comprometiéndome a pagar en el caso que se incurran otros gastos todo el importe de los mismos." ·

El pleito estaba terminado desde mayo 25, 1932, y las costas, comprendiendo en ellas no sólo los gastos por sellos si que la suma de mil dólares por honorarios de abogado, quedaron definitivamente fijadas desde diciembre 15, 1932.

Interpretada la carta a la luz de esos hechos, sólo puede serlo como una petición para que se dé por saldada una deuda de $1,024 mediante el pago de $24.

Dudó la asamblea de sus facultades y adoptó una ordenanza nombrando una comisión de su seno encargándole que realizara un viaje a la capital de la Isla y consultara con un bogado si era posible acceder a lo solicitado. Uno de los por cuantos de la ordenanza, expresa:

"Por cuanto, este municipio no tiene interés en seguir dicho pleito a pesar de haber sido declarada sin lugar la demanda entablada por el solicitante, pero desea ponerse a cubierto con las resul-

tas que pudiera haber por haber utilizado el Alcalde los servicios de un abogado sin la correspondiente autorización de esta Asamblea en la forma que indica la sección 27 de la Ley Municipal;''

No se explica por qué tenía que ponerse a cubierto la asamblea por haber utilizado el alcalde sin su autorización los servicios de un abogado. Si el acto del alcalde era nulo, ninguna responsabilidad podría sobrevenir al municipio. Si no lo era, ya tenía el municipio concedida la cantidad en que se justipreciaron los servicios del abogado. La responsabilidad que el municipio en ese último caso hubiera contraído para con el abogado, no cesaba por el hecho de que Alvarez la asumiera, a menos que a ello se aviniera el abogado, y en vez de avenirse, consta de la petición que el abogado se opuso a que la asamblea accediera a la solicitud de Alvarez.

La comisión nombrada se trasladó a San Juan y a su regreso informó verbalmente a la asamblea que el abogado Bolívar Pagán no tendría inconveniente en estudiar el caso y la asamblea adoptó otra ordenanza que contiene las tres secciones que sigue:

''Sección 1ª.—Por la presente se autoriza al Lic. Bolívar Pagán para que, previo un estudio de todos los documentos del caso, emita un informe a esta Asamblea Municipal, si puede ésta dictar y aprobar una ordenanza solicitando el levantamiento del embargo en los bienes del demandante para asegurar el pago de las costas y costos que se incurrieron en dicho pleito y dar por terminado el susodicho pleito y al propio tiempo si por esta decisión puede el Municipio incurrir en otro pleito con el abogado Figueroa del Rosario por sus honorarios que dice haber devengado en este asunto.

''Sección 2ª.—Que los honorarios que devengue el Lic. Bolívar Pagán por este informe sean por cuenta del demandante don Pedro María Alvarez y Lugo.

''Sección 3ª.—Que esta ordenanza, por su carácter urgente, empezará a regir tan pronto sea aprobada por el Alcalde.''

Informó favorablemente el abogado y la asamblea dictó la resolución impugnada, que se titula: ''Resolución para exonerar a don Pedro María Alvarez Lugo del pago de las

costas, desembolsos y honorarios de abogados en el pleito resuelto por la Corte Suprema de Puerto Rico, en diciembre de 1932, que lleva el No. 5519, titulado Pedro María Alvarez Lugo, demandante y apelante *vs.* El Municipio de Añasco, demandado y apelado y para otros fines.''

Sus por cuantos y su parte dispositiva, expresan:

''Por cuanto, allá por el 15 de diciembre de 1932, la Corte Suprema de Puerto Rico dictó sentencia final en el pleito núm. 5519, titulado Pedro María Alvarez Lugo, demandante apelante vs. El Municipio de Añasco, demandado apelado declarando sin lugar la demanda, y condenando al demandante a pagar al demandado las costas, desembolsos y honorarios de abogados;

''Por cuanto, dicho caso fué un pleito iniciado hace mucho tiempo por don Pedro María Alvarez Lugo contra el Municipio de Añasco, sobre negatoria de servidumbre para que se levantara cierta tubería del acueducto de Añasco tendida en los terrenos de una finca propiedad de dicho señor Alvarez Lugo en el barrio Humatas, de Añasco, en el cual pleito el Municipio de Añasco no autorizó debidamente a ningún abogado para que le representara en dicho caso, porque el demandante Pedro María Alvarez Lugo abandonó la acción establecida en dicho pleito comprometiéndose a no cubrir daños ni perjuicios algunos al Municipio de Añasco ni insistir en solicitar que se levantase la referida tubería;

''Por cuanto, no es justo, dentro de las circunstancias expresadas, y no habiendo el municipio de Añasco autorizado debidamente abogado alguno para comparecer en dicho pleito, ni haber hecho ningunos gastos en las gestiones del mismo, que cubra al demandante tales gastos y honorarios de abogados;

''Por cuanto, don Pedro María Álvarez Lugo es un ciudadano de ejemplares virtudes ciudadanas, está prestando una cooperación franca y entusiasta al éxito del gobierno municipal de Añasco;

''Por cuanto, es el deseo del gobierno municipal de Añasco exonerar a don Pedro María Alvarez Lugo de cualquier responsabilidad con motivo del susodicho pleito;

''Por cuanto, don Pedro María Alvarez Lugo acepta lo provisto en la presente resolución que aparecerá más abajo en la parte dispositiva, comprometiéndose, como se compromete dicho señor Alvarez Lugo a subrogarse en las obligaciones y responsabilidades que pudiera tener el municipio de Añasco en cualquier reclamación que se pudiera suscitar en relación con el susodicho pleito:

"POR TANTO, *Resuélvase por la Asamblea Municipal de Añasco, P. R.*

"Sección 1ª.—Que se exonere, como por la presente se exonera, a don Pedro María Alvarez Lugo de cualquier responsabilidad legal que pudiera surgir en relación con el pleito civil No. 5519 titulado Pedro María Alvarez Lugo, demandante apelante vs. El Municipio de Añasco, demandado apelado, resuelto por la Corte Suprema de Puerto Rico el 15 de diciembre de 1932 en apelación procedente de la Corte de Distrito de Mayagüez en pleito entre las mismas partes no. 13951.

"Sección 2ª.—Toda resolución u ordenanza en conflicto con la presente queda por ésta derogada.

"Sección 3ª.—La presente resolución, por ser de carácter urgente empezará a regir inmediatamente que fuere aprobada, y don Pedro María Alvarez Lugo por escrito se dirija al Alcalde de Añasco aceptando todo el contenido de la presente resolución."

Y por último aceptó Alvarez la resolución por carta dirigida a la asamblea en los siguientes términos:

"Acuso recibo de la copia de una ordenanza aprobada por la Asamblea Municipal de este pueblo en relación con el caso de Pedro María Alvarez y Lugo vs. Municipio de Añasco, Puerto Rico.

"De acuerdo con la ordenanza por la presente me comprometo con este municipio a defender al mismo por mi cuenta en cuantos pleitos y gastos se incurran después de aprobada la ordenanza a que me refiero."

Convenimos con la parte apelante en que dentro del recurso de *certiorari* no cabe investigar los motivos que tuviera la asamblea para adoptar su resolución (*Piovanetti* v. *Asamblea Municipal de Yauco*, 31 D.P.R. 522) y en que sólo cabe considerar como admitidos aquellos hechos de la petición que no fueren contradichos por el *return* (*Rodríguez* v. *Asamblea Municipal de Guánica*, 31 D.P.R. 493), pero ello no quiere decir que si contrastadas ciertas afirmaciones que pueda contener una ordenanza o resolución de una asamblea con los hechos básicos admitidos como ciertos, quedan dichas afirmaciones destruídas, no pueda la corte echarlas a un lado para ir hasta el fondo y establecer la verdad tal como

surja de la propia ordenanza o resolución debidamente analizada, depurada e interpretada.

A lo ya expresado comentando la petición de Alvarez y uno de los por cuantos de la primera de las dos ordenanzas previas a la adopción de la resolución final impugnada, agregaremos que las afirmaciones que en el segundo por cuanto de la dicha resolución se hacen con respecto a no haber el municipio autorizado al abogado que lo representara en el pleito sobre negatoria de servidumbre en que fué demandado y a haber Alvarez abandonado la acción, están en pugna con la realidad de los hechos, esto es, con la existencia del pleito y con las dos apelaciones establecidas por Alvarez contra la sentencia y contra la resolución fijando las costas, y que siendo ello así, por el solo hecho de que Alvarez sea "un ciudadano de ejemplares virtudes" que "está prestando una cooperación franca y entusiasta al éxito del gobierno municipal de Añasco", no está justificada la asamblea municipal para exonerarlo del pago de una deuda reconocida por sentencia para el cobro de la cual, a mayor abundamiento, se ha trabado ya embargo sobre propiedad del deudor, especialmente dejando como se deja subsistente una posible, más que posible, casi cierta reclamación contra el municipio por los mismos honorarios que su asamblea renuncia.

El color de legalidad que tales afirmaciones pretenden dar a la resolución, se desvanece a la luz de la verdad que pugna por surgir y surge finalmente del propio *return*. Y esa verdad no es otra que la de una renuncia gratuita de una propiedad del municipio hecha por la asamblea a favor de una persona, para hacer la cual carecía de facultades. El acto que realizó en su consecuencia carece de eficacia y al declararlo así no cometió la corte sentenciadora los dos últimos errores que le atribuye la apelante.

*El recurso debe declararse sin lugar y confirmarse la resolución apelada.*

El Juez Asociado Señor Córdova Dávila no se encuentra presente en el momento en que se pronuncia esta sentencia,

pero ha dado su consentimiento para que se haga constar que está conforme con la misma y con la opinión en que se funda.