ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrente, *v.* LA ASOCIACIÓN DE EMPLEADOS DE OBRAS PÚBLICAS MUNICIPAL, ETC., demandados y recurridos.

*Número:* RE-86-12          *Resuelto:* 30 de abril de 1990

322

*Rafael Ortiz Carrión, Procurador General, Dora T. Peñagarícano, Procuradora General Auxiliar,* y *Bruno Cortés Trigo, Secretario Auxiliar de Asesoramiento,* abogados del Estado Libre Asociado; *Máximo R. Ruidiaz,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

El Estado Libre Asociado de Puerto Rico (E.L.A.) ha recurrido ante nos de una sentencia dictada el 7 de noviembre de 1985 por el Tribunal Superior, Sala de Carolina. Dicha sentencia desestimó la demanda en cobro de dinero presentada por el Estado contra los recurridos de epígrafe para cobrar una aportación de cincuenta mil dólares ($50,000) hecha por el entonces Alcalde de Carolina (el recurrido Fernández Corujo) a la Asociación de Empleados de Obras Públicas Municipales (la Asociación) de dicha municipalidad.

## I

Con el fin de "alcanzar unas relaciones armoniosas entre la Asociación y el Municipio", el 21 de agosto de 1973 el entonces alcalde del Municipio de Carolina, Sr. Manuel Fernández Corujo (en representación del municipio), firmó un "Acuerdo Administrativo" con la Asociación (representada por su presidente, José Luis Ortiz Cortijo). Apéndice de la petición de revisión, pág. 9. La Asociación es una agrupación *bona fide* de empleados públicos debidamente acreditada por el Secretario del Trabajo y Recursos Humanos de Puerto Rico a tenor con las disposiciones de la Ley Núm. 139 de 30 de junio de 1961 (3 L.P.R.A. sec. 755 *et seq.*).

Posteriormente, las mismas partes firmaron un documento denominado "*Addendum* a Carta Contractual" el cual disponía en su segunda cláusula que el municipio aportaría la suma de cincuenta mil dólares ($50,000) para fondos de bienestar de los empleados de Obras Públicas Municipal. Este dinero se pagaría a la Asociación en dos (2) partidas de veinticinco mil dólares ($25,000) durante el año económico 1975–1976.

El 15 de octubre de 1975 la Asamblea Municipal del Municipio de Carolina aprobó, con el voto afirmativo de once (11) de sus dieciséis (16) asambleístas, la Ordenanza Núm. 9, serie 1975–1976. Dicha ordenanza creó la partida nueva siguiente:

3066 — Aportación en Beneficios Marginales a Empleados de la Asociación de Empleados Municipales ....... $50,000. Apéndice de la Petición de revisión, pág. 29.

Esta ordenanza fue firmada por el Presidente de la Asamblea Municipal y por el Alcalde Fernández Corujo.

· Mediante los libramientos de cheques Núms. 1258 y 3016 de 30 de octubre de 1975 y de 24 de febrero de 1976, el Municipio de Carolina, a través del ex Director de Finanzas, Edwin Quiñones Conde, autorizó el desembolso por la cantidad de veinticinco mil dólares ($25,000) en cada libramiento a favor de la Asociación. Se estableció como concepto de aportación municipal en beneficios marginales a empleados de la Asociación de Empleados Municipales. Apéndice de la Petición de revisión, págs. 38–41. Se expidieron los correspondientes cheques, que fueron cobrados por la Asociación.

El 27 de septiembre de 1976 el Contralor de Puerto Rico rindió un informe sobre el Municipio de Carolina en el cual concluyó que el acuerdo entre el Municipio y la Asociación era *ultra vires* y, por consiguiente, nulo. El 23 de mayo de 1979, unos dos años y medio (2½) después de rendido dicho informe, el Secretario de Justicia de Puerto Rico, en representación del E.L.A., instó la demanda en cobro de dinero contra los recurridos. En la misma alegó que el pago de cincuenta mil dólares ($50,000) constituyó un desembolso ilegal de fondos del municipio y que, por lo tanto, los recurridos venían obligados a restituirlos a las arcas del Municipio de Carolina.

Al contestar, los recurridos Fernández Corujo y Quiñones Conde negaron las alegaciones que les imputaban el desembolso ilegal de fondos. Adujeron que los contratos realizados con la Asociación estaban autorizados por ley y que actuaron en su carácter oficial, de buena fe y sin ánimo de lucro personal. Al mismo tiempo instaron reconvención en daños y perjuicios por alegados daños a la imagen política del recurrido Fernández Corujo. Dicha reconvención fue desestimada por el foro de instancia al no aportarse prueba ni estipulación que la sostuviera en derecho.

Ante estos hechos el foro de instancia dictó sentencia para desestimar la demanda en cobro de dinero en todas sus partes. Concluyó que siendo la Asociación una *bona fide* de servicios

públicos, podía gestionar beneficios para sus afiliados a través de contratos como el de autos con el municipio y que éste podía asignarle fondos por ser una asociación que promovía el interés general de la comunidad.

Concluyó, además, que tanto el alcalde como el director de finanzas estaban inmunes de la reclamación al actuar en su capacidad oficial y de buena fe. En cuanto a la Asociación y su presidente, sostuvo que no venían obligados a devolver el dinero al aplicar la doctrina de pago bajo un error de derecho.

Finalmente concluyó que el Estado no acreditó que la ordenanza que autorizó el desembolso era nula. Por lo tanto, se presumía su validez y, por haber transcurrido el término para impugnarla, la acción del Estado había caducado. Art. 95 de la Ley Municipal, 21 L.P.R.A. ant. sec. 1602.

## II

Ante nos el Estado levanta, como señalamientos de error de la sentencia, la inaplicabilidad del Art. 95 de la anterior Ley Municipal, *supra*, al caso de autos; el no determinar que el acuerdo administrativo y su *addendum* eran nulos, y el no ordenar a los recurridos la restitución de los fondos ilegalmente desembolsados a la Asociación. Decidimos revisar.

Discutiremos los señalamientos de error en la forma que nos han sido planteados. El primero, por tratar sobre una cuestión jurisdiccional, requiere nuestra atención prioritaria.

## III

El Procurador General sostiene que a las acciones instadas por el Departamento de Justicia, al amparo de la Ley Núm. 17 de 8 de mayo de 1973 (3 L.P.R.A. sec. 136), no le aplica el término de "caducidad" dispuesto en el Art. 95 de la Ley Municipal, *supra*, porque se estaría frustrando la política pública —de dimensión constitucional— de que los desembolsos del erario se lleven a cabo conforme a la ley. Concluimos que le asiste la razón.

■ El Contralor es un cargo creado constitucionalmente para fiscalizar todos los ingresos, las cuentas y los desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si fueron hechos conforme a la ley. Su perfil y contornos constitucionales están plasmados en la Sec. 22 del Art. III de nuestra Constitución, L.P.R.A., Tomo 1.

■ La Asamblea Constituyente de nuestra Constitución tuvo la preocupación especial de separar las funciones de contabilidad de las de auditoría en el cargo de Contralor. 2 Diario de Sesiones de la Convención Constituyente 750, 920–921 y 925 (1951).

Por ello, la propuesta sustituta aprobada por la Convención Constituyente adoptó el modelo que le confiere al Contralor la función de auditoría (post intervención), siguiendo en términos generales el esquema de la Constitución de once (11) estados de Estados Unidos. *Notes & Comments on the Constitution of the Commonwealth of P.R.*, Washington, D.C., 1952, pág. 78.

■ El cargo de Contralor quedó enmarcado dentro del Poder Legislativo de nuestro sistema de gobierno.

■ Para implantar el mandato constitucional, la Ley Núm. 9 de 24 de julio de 1952, según enmendada, 2 L.P.R.A. sec. 71 *et seq.*, creó la Oficina del Contralor del Estado Libre Asociado, confiriéndole facultades investigativas y mecanismos para llevar a cabo las investigaciones sobre las cuentas y los desembolsos de fondos públicos.

■ Además, dicha ley le proveyó al Contralor un poder altamente disuasivo: dar publicidad a sus informes. 2 L.P.R.A. sec. 83.

■ Sin embargo, ni la Constitución ni la legislación vigente facultan al Contralor para aplicar o tramitar directamente las sanciones por aquellas violaciones de ley que surjan de sus investigaciones. Su encomienda se limita a informar estas irregularidades a la Asamblea Legislativa, al Gobernador y al Secretario de Justicia.

■ La facultad de encauzar acciones criminales e instar acciones civiles ante los tribunales de justicia que surjan como resultado de cualquier intervención del Contralor en relación con los ingresos, cuentas y desembolsos de los municipios fue conferida mediante la Ley Núm. 17, *supra*, 3 L.P.R.A. secs. 136(a) y 136(b), a la Oficina de Asuntos del Contralor adscrita al Departamento de Justicia.(1) Para el Secretario de Justicia de Puerto Rico llevar a cabo las facultades conferidas por dicha ley puede utilizar las disposiciones sustantivas y procesales de nuestro ordenamiento civil y criminal. 3 L.P.R.A. sec. 136(b). *Cf.* 3 L.P.R.A. secs. 82 y 82a; *Ocasio v. Alcalde Mun. de Maunabo,* 121 D.P.R. 37 (1988).

■ Las acciones civiles o criminales instadas por el Secretario de Justicia bajo las disposiciones de la Ley Núm. 17, *supra, son acciones independientes* de las acciones contra las actuaciones del alcalde, de la Asamblea Municipal o de la Junta de Subastas o funcionarios municipales a tenor con la Ley Municipal. Con ello se persigue el objetivo de la Ley Núm. 17, *supra,* de "dotar al Contralor de Puerto Rico de aquellos remedios procesales adicionales a los ya establecidos en su Ley Orgánica [y en la Ley Municipal] que le hagan posible el cumplimiento efectivo de las funciones y responsabilidades que la Constitución delegó en él para salvaguardar la honestidad administrativa y la legalidad en el manejo de fondos públicos". Véanse: Informe de las Comisiones de Hacienda y Gobierno del Senado sobre el P. del S. 401; Informe Conjunto de las Comisiones de Gobierno y de lo Jurídico de la Cámara de Representantes sobre el P. de la C. 440.

■ Por otro lado, el referido Art. 95 de la Ley Municipal de 1960,(2) concedía un remedio para cuestionar la legalidad de las

---

(1) Esa ley entró en vigor el 1ro de julio de 1973, por lo que aplica al caso de autos.

(2) Este artículo proviene del Art. 83 de la Ley Municipal de 1928 que, a su vez, provenía del Art. 65 de la Ley Municipal de 1919. Actualmente es el Art. 11.02 de la Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 3402). Los artículos anteriores a la ley de 1960 concedían un término de treinta (30) días.

actuaciones de la Asamblea Municipal o del Alcalde. El mismo disponía:

*Sec. 1602. Revisión por parte perjudicada; jurisdicción del Tribunal Superior*

El Tribunal Superior de Puerto Rico tendrá jurisdicción, a instancia de *parte perjudicada*:

(a) Para revisar o anular cualquier acto legislativo o administrativo de la asamblea municipal, de la junta de subasta, del Alcalde o de cualquier funcionario de los municipios que lesione derechos constitucionales de los querellantes o sea contrario a las leyes de Puerto Rico.

(b) Para suspender la ejecución de cualquier ordenanza, acuerdo, resolución u orden de la asamblea municipal, de la junta de subasta, del alcalde y de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.

(c) Para compeler el cumplimiento de deberes ministeriales por los funcionarios de los municipios.

(d) Para conceder, mediante juicio ordinario, compensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios o empleados de los municipios por malicia, negligencia o ignorancia inexcusable.

En los dos primeros casos la parte perjudicada sólo podrá establecer la correspondiente demanda dentro del plazo de veinte (20) días a contar de la fecha en que el acto ejecutivo o administrativo haya sido realizado o que la ordenanza, resolución, acuerdo u orden hayan sido promulgados o comunicados a la parte querellante, a menos que se disponga otra cosa por ley.

La facultad conferida por dicho artículo al Tribunal Superior para suspender la ejecución de una ordenanza, acto legislativo, administrativo o ejecutivo del Alcalde o de la Asamblea Municipal se refiere expresamente a *partes perjudicadas*.(3) Nuestra jurisprudencia interpretativa del Art. 95 o sus anteceso-

---

(3) Del examen conjunto de sus incisos y párrafo final se desprende que al mismo tiempo que se le concedía a la parte perjudicada un remedio frente a los actos del gobierno municipal se le brindaba a dicho gobierno la salvaguarda de un término de caducidad para conferir estabilidad a sus actuaciones. De ahí que en *Centeno Rivera v. Pacheco de Algarín*, 94 D.P.R. 528, 530 (1967), expresáramos que "[e]l término de veinte días anteriormente mencionado es claramente un período de *caducidad*, que no solamente

res ha reconocido que son "partes perjudicadas" los ciudadanos particulares (*Porras v. Concejo de Administración*, 37 D.P.R. 741, 746 (1928); *Sosa v. Cabán Alcalde*, 72 D.P.R. 836, 841 (1951); *Berríos v. Asamblea Mun. de Yabucoa*, 30 D.P.R. 414 (1922); *Chapel v. Asamblea Municipal*, 49 D.P.R. 607, 611 (1936); *Benítez Rexach v. Municipio*, 43 D.P.R. 734 (1932)) y los funcionarios municipales cuyo interés particular se ve afectado por las actuaciones del Alcalde o de la Asamblea Municipal (*Banuchi v. Asamblea Municipal*, 37 D.P.R. 946, 952 (1928); *Centeno Rivera v. Pacheco de Algarín*, 94 D.P.R. 528 (1967); *Caballero v. Romero Barceló*, 103 D.P.R. 1 (1974)).

El remedio provisto al ciudadano particular[4] o al funcionario municipal es exclusivo. 6 *McQuillin Mun. Corp.* Sec. 20.15 (3ra ed.). Sin embargo, ésta no es la situación cuando se trata de una acción instada por el Secretario de Justicia para hacer valer una recomendación del Contralor sobre la legalidad del manejo de fondos públicos.

Los municipios, criaturas de la Asamblea Legislativa —*Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988); *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988); *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496 (1989)— están sujetos a la auditoría del Contralor. Véanse: Art. III, Sec. 22, Const. E.L.A., L.P.R.A., Tomo 1; 2 L.P.R.A. sec. 71. Dichas investigaciones están revestidas del más alto interés público y van dirigidas a depurar la administración de nuestros municipios.

---

compete a la parte interesada invocarlo sino que es función del tribunal hacerlo valer a instancia propia". (Cita omitida.)

Según nuestra decisión, ese término no aplica en el caso del inciso (c), esto es, "[p]ara compeler el cumplimiento de deberes ministeriales por los funcionarios de los municipios". 21 L.P.R.A. sec. 3402. Véase, además, *Caballero v. Romero Barceló*, 103 D.P.R. 1 (1974).

(4) Hemos resuelto que el ciudadano no puede instar una acción ordinaria con el fin de anular una ordenanza (*La Liga de Propietarios v. La Ciudad de San Juan*, 14 D.P.R. 86 (1908); *Truyol v. Municipio de Guayama*, 19 D.P.R. 541 (1913); *S.J. Hippodrome Co. v. Com. Hípica Insular*, 21 D.P.R. 1 (1914)), sino que tiene que recurrir al remedio concedido en la ley municipal (*San Millán v. Asamblea Municipal de Arecibo*, 32 D.P.R. 279 (1923); *Yabucoa Sugar Co. v. Yabucoa*, 33 D.P.R. 360 (1924)).

■ Al aprobarse la Ley Núm. 17, *supra*, la Asamblea Legislativa le concedió al Contralor unas acciones, civiles y criminales, *adicionales e independientes* a las provistas por el Art. 95 de la Ley Municipal, *supra*, como medio de vindicar ese interés público y descargar debidamente su función constitucional. De no ser así, sus facultades constitucionales se verían seriamente afectadas.

■ Claro está, las acciones civiles o criminales que tramite el Contralor a través del Secretario de Justicia y a tenor con la Ley Núm. 17, *supra*, tendrán las limitaciones (términos prescriptivos, etc.) de la acción escogida para encausar a los funcionarios municipales, quienes según dichas investigaciones hayan incurrido en violaciones a la ley en el manejo y en la administración de fondos públicos.

■ La encomienda constitucional del Contralor, la naturaleza, los poderes y las facultades de su cargo, así como las consideraciones de interés público justifican la diversidad de acciones disponibles al Contralor para cuestionar las actuaciones del Alcalde y de la Asamblea Municipal y el trato diferente con la acción que tienen los ciudadanos particulares y los funcionarios municipales. De suerte que por no ser el citado Art. 95 el remedio exclusivo del Contralor para encausar a los funcionarios municipales que según sus investigaciones incurren en violación a la ley en el manejo de fondos públicos, el término de caducidad dispuesto en el referido artículo no opera ni obstaculiza tales reclamaciones.

■ La acción en cobro de dinero instada en el caso de autos a tenor con la Ley Núm. 17, *supra*, no había prescrito —Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294; J. Vélez Torres, *Curso de Derecho Civil*, San Juan, 1981, T. IV, Vol. I, pág. 200— por lo que el foro de instancia tenía jurisdicción sobre la misma.

## IV

Por su íntima relación, discutiremos los señalamientos de error segundo y tercero conjuntamente.

El Procurador General y el Contralor sostienen que la Carta Contractual y su *addendum* es nula por estarles vedado a los municipios negociar colectivamente. Siendo nulo el contrato, sostienen que el pago de cincuenta mil dólares ($50,000) fue hecho indebidamente, por lo que corresponde a la Asociación devolver el mismo.

■ A nuestros municipios les está vedado negociar colectivamente con organizaciones obreras sobre los términos y las condiciones de trabajo de sus empleados. Art. II, Secs. 17 y 18, Const. E.L.A., L.P.R.A., Tomo 1; *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697 (1983). La proscripción se extiende a prohibir la organización de los empleados a través de las uniones obreras.

■ El acuerdo sobre beneficios marginales en autos, por el contrario, busca promover el progreso social y económico de la Asociación *certificada como "bona fide"* por el Departamento del Trabajo y Recursos Humanos de Puerto Rico y las relaciones armoniosas entre ésta y el municipio en pro del bienestar común. *Tal Asociación fue creada en virtud de la autorización conferida por la Ley Núm. 139, supra,* como una organización *bona fide* de empleados públicos.

Bajo tales circunstancias, el Art. 8.14 de la Ley Municipal, 21 L.P.R.A. sec. 3264, autoriza al Municipio a hacer la aportación en controversia.

En ausencia de prueba demostrativa de beneficio personal, fraude o malversación de dichos fondos, tal acuerdo es válido y se ajusta a la ley.

## V

Al presente caso no le aplica la doctrina de pago por un error de derecho como sostiene el Procurador General.

Las obligaciones contractuales contraídas por los municipios se rigen por la teoría general de los contratos, excepto en aquellas situaciones donde rigen ciertos estatutos especiales que modifican tal relación. *Plan Bienestar Salud v. Alcalde Cabo Rojo*, supra, pág. 699. De ahí que la doctrina de cobro de lo indebido les sea aplicable a sus relaciones contractuales. Según tal doctrina, el que recibe alguna cosa que no tenía el derecho a cobrar y que por un error de hecho ha sido indebidamente entregada, tiene la obligación de restituirle a quien la pagó. Art. 1795 del Código Civil, 31 L.P.R.A. sec. 5121; *Sucn. Choisne v. Municipio*, 100 D.P.R. 501 (1972); *A.C.A.A. v. Bird Pinero*, 115 D.P.R. 463 (1984); *Cartagena v. E.L.A.*, 116 D.P.R. 254 (1985).

Para que se configure este cuasicontrato es necesario que se haya pagado indebidamente y que dicho pago se haya hecho por error o equivocación, y no por mera liberalidad. *Silva v. Sucn. Caratini*, 51 D.P.R. 778 (1937); *Sucesión Marín v. Municipio de Arecibo*, 28 D.P.R. 515 (1920); *American R.R. Co. of P.R. v. Wolkers*, 22 D.P.R. 283 (1915); *Arandes v. Báez*, 20 D.P.R. 388 (1914).

Este cuasicontrato requiere que quien recibe el pago no tenga derecho a recibirlo. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., Madrid, Ed. Reus, 1977, pág. 866. Establecido que la aportación del Municipio a la Asociación no fue un acto *ultra vires* y sí la válida prestación en un acuerdo válido, la Asociación tenía derecho a recibir dicho pago. Por lo tanto, no venía obligada a restituir nada por no configurarse el cuasicontrato de pago de lo indebido.[5]

---

[5] El recurrente reconoce que mediante el *addendum* a la carta contractual de 16 de julio de 1975, el entonces Alcalde de Carolina y aquí recurrido, Manuel Fernández Corujo, se comprometió a aportar "'la suma de $50,000 para fondos de bienestar de los empleados públicos municipales, los cuales serán pagados a la Asociación . . .". Petición de revisión, pág. 10. Reconoce, además, que "en virtud del Artículo Núm. 7 de la Ley Municipal de 21 de julio de 1960, *supra*, el Alcalde tenía las facultades de llevar a cabo acuerdos con la Asociación de Empleados que redundaran en beneficio del progreso del Municipio de Carolina", íd., pág. 11, y que "el pago [en cuestión] se hizo [precisamente] con la clara intención de extinguir la obligación [preceptuada en la Ordenanza Núm. 9]", íd., pág. 15.

*Se dictará sentencia confirmatoria de la del foro de instancia.*

El Juez Asociado Señor Negrón García emitió opinión disidente, a la cual se une el Juez Asociado Señor Rebollo López.

—O—

Opinión concurrente y disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

I

Luego de reflexionar profundamente, hemos decidido intervenir y plasmar por escrito nuestro criterio jurídico concurrente y disidente. La importancia del presente recurso, revestido de un gran interés público, en conciencia así lo amerita.

Suscribimos el análisis mayoritario del Tribunal de que el término de caducidad establecido en el Art. 95 de la Ley Municipal (21 L.P.R.A. ant. sec. 1602)(6) —para cuestionarse ante los tribunales la validez de un acto legislativo o administrativo del Alcalde, Asamblea Municipal u otro funcionario municipal— no aplica al ejercicio de acciones independientes, encauzadas por la Oficina de Asuntos del Contralor adscrita al Departamento de Justicia. Ley Núm. 17 de 8 de mayo de 1973 (3 L.P.R.A. sec. 136(a) y (b)). Véase los pronunciamientos en *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37 (1988).

II

Sin embargo, *disentimos* de la conclusión que sostiene la validez de la aportación de cincuenta mil dólares ($50,000) en concepto de "beneficios marginales" hecha a la Asociación de

---

(6) Ley Núm. 142 de 21 de julio de 1960, según fue enmendada por la Ley Núm. 114 de 27 de junio de 1964. Posteriormente fue enmendada en 1980, Ley Orgánica de los Municipios, Art. 11.02 (21 L.P.R.A. sec. 3402). La enmienda mantuvo el término de caducidad de veinte (20) días dispuesto por el Art. 95 (21 L.P. R.A. ant. sec. 1602).

Empleados de Obras Públicas Municipales (Asociación) por el Alcalde del Municipio de Carolina, Manuel Fernández Corujo, según la Ordenanza Núm. 9, Serie 1975–1976 de la Asamblea Municipal y su *addendum*. LA MISMA ES NULA. NO EXISTE DISPOSICIÓN EN LEY QUE AUTORICE O PERMITA ESTE DESEMBOLSO. Nos explicamos.

*Primeramente*, un análisis de la ley municipal revela que no hay precepto que regule la situación. Por el contrario, destacamos que la propia ley reglamenta las relaciones con los empleados y obreros, la implantación de sus sueldos, vacaciones, etc. y no visualiza ni permite una aportación de este género.

La única disposición estatutaria que autoriza a los municipios a ceder fondos a entidades o agrupaciones "legalmente constituidas sin fines pecuniarios que no fueren partidistas ni fueren agrupaciones con fines políticos" —Art. 8.14 (21 L.P.R.A. sec. 3264)— es claramente *inaplicable*. Según la misma, la cesión de fondos públicos sólo puede hacerse si la entidad o agrupación está *dedicada* "a actividades de *interés público que promuevan el interés general de la comunidad*, siempre y cuando esta cesión no interrumpa las funciones propias del municipio". Íd.

Obviamente, una asociación de empleados de obras públicas municipales no encuadra en esta concepción legislativa. Aparte del argumento teórico, *in abstracto*, de que una Asociación *indirectamente* puede promover el bienestar general comunitario, lo cierto es que su génesis y razón de ser son los intereses primarios de sus miembros.

*Segundo*, la Ley Núm. 139 de 30 de junio de 1961 (3 L.P.R.A. sec. 755 *et seq.*), que reconoce a los empleados municipales la facultad de organizarse en agrupaciones *bona fide*, sólo autoriza que —previa autorización por escrito— se le descuente al empleado de su salario una cuota razonable y uniforme, y que oportunamente se le remita al oficial designado de la Asociación.

Y *tercero*, la *única* aportación permitida por la Asamblea Legislativa a los municipios es el pago "del cincuenta por ciento (50%), de las primas individuales correspondientes a los planes de servicios médico-quirúrgicos y de hospitalización" de los emplea-

dos municipales como miembros de la agrupación *bona fide*. Ley Núm. 98 de 25 de junio de 1962 (3 L.P.R.A. sec. 756).

## III

La premisa mayor que sostiene el dictamen mayoritario es sumamente frágil. Se apuntala, esencialmente, en que la Asociación fue debidamente certificada como *bona fide*, al amparo de la Ley Núm. 139 antes mencionada, y que la cesión de cincuenta mil dólares ($50,000) "busca promover el progreso social y económico de la Asociación . . . y las relaciones armoniosas entre ésta y el municipio en pro del bienestar común". Opinión mayoritaria, pág. 332.

El argumento es circular y erróneo. *HEMOS VISTO QUE NI LA LEY MUNICIPAL NI LA REFERIDA LEY NÚM. 139 AUTORIZAN EXPRESAMENTE ESTE DESEMBOLSO. LA RAZÓN DE EXISTIR DE LA ASOCIACIÓN SON SUS MIEMBROS. SEGÚN DICHA LEY, TALES ASOCIACIONES SE CREAN PRECISAMENTE "PARA PROMOVER SU PROGRESO SOCIAL Y ECONÓMICO".* De ese s[o]lo propósito, en buena lógica, no es posible colegir autoridad legal, ni menos, dar un salto conceptual y concatenar un razonamiento para validar el desembolso.

El otro argumento que se aduce, al decir mayoritario —la "ausencia de prueba demostrativa de beneficio personal, fraude o malversación de dichos fondos" (opinión mayoritaria, pág. 332)— tampoco es convincente. La inexistencia de esos elementos viciosos o de corrupción no son suficientes. Nunca la legalidad de los desembolsos públicos ha estado atada exclusivamente a fines públicos provechosos. Precisa del imperativo constitucional de que sólo se dispondrá de los fondos públicos para *esos fines, y "en todo caso por autoridad de ley"*. Art. VI, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1. Repetimos, el único "beneficio marginal" que un municipio está legalmente autorizado a hacer es la mitad de la prima para servicios médico-quirúrgicos de los miembros de una asociación.

En resumen, bajo el derecho vigente —salvo el pago de la mitad de las primas para planes médicos— no existe *autoridad en ley* para el desembolso por un municipio de suma alguna de dinero a una asociación de sus empleados en concepto de "beneficios marginales". Por ende, la ordenanza municipal que nos ocupa, creadora de la partida de cincuenta mil dólares ($50,000) y su *addendum* —posteriormente suscrito por el Alcalde— son nulos.

La opinión mayoritaria abre una puerta peligrosa. La sabiduría y legalidad de la autorización de aportaciones de este tipo por parte de los municipios a sus empleados o asociaciones es materia que corresponde a la Asamblea Legislativa. El inventario decisorio crea un desbalance económico en un área crucial de la sana administración pública. A la vez inyecta en la dimensión de las relaciones obrero-patronales en los municipios un elemento nocivo, susceptible de generar desembolsos fundamentados exclusivamente en motivaciones político-partidistas.

Estamos ante un dispendio ilegal de los fondos públicos municipales. Debió revocarse la sentencia del Tribunal Superior, Sala de Carolina, y declararse con lugar la demanda.