El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
El presente recurso está relacionado con una demanda de injunction y sentencia declaratoria presentada por la Asociación de Alcaldes de Puerto Rico (Asociación) para impugnar un informe del Contralor de Puerto Rico (Contralor), en el cual éste concluye que la Asociación es una entidad partidista y que, como tal, no tiene derecho a recibir donativos de los municipios. Asimismo, el Contralor recomendó a varios municipios solicitar el reembolso de ciertos donativos hechos a la Asociación para las celebraciones conmemorativas del Día de la Constitución del Estado Libre Asociado de Puerto Rico.
Esta controversia nos brinda la oportunidad de aclarar la naturaleza de los hallazgos y las recomendaciones que hace el Contralor en sus informes de auditoría y determinar si éstos son revisables —de forma directa e inmediata— en los foros judiciales.
Tras un ponderado análisis de las facultades constitucionales y estatutarias otorgadas al Contralor, de la intención de los delegados de la Convención Constituyente al crear dicho cargo, así como de la doctrina de justiciabilidad, resolvemos que la demanda presentada por la Asociación no presenta una controversia justiciable al no cumplir con el requisito de “caso o controversia”. En vista de ello, confirmamos la sentencia del Tribunal de Apelaciones, que ordenó la desestimación de la referida demanda.
I
Los hechos del caso de autos no están en controversia. El 17 de diciembre de 2004 el Contralor emitió el Informe de Auditoría DB-05-11. En dicho informe, entre otras cosas, se determinó que —a la luz de su participación en las estructuras internas del Partido Popular Democrático— la Asociación era una entidad partidista, por lo que los muni *155 cipios no tenían autoridad en ley para otorgarle donativos conforme a la See. 9 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, y el Art. 9.014 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. see. 4464).(1) Como consecuencia de lo anterior, el Contralor concluyó que varios municipios miembros de la Asociación cedieron ilegalmente fondos públicos a esa entidad para la celebración de los actos conmemorativos del Día de la Constitución, y les recomendó que solicitaran la devolución de los fondos donados.(2)
Tras recibir el informe del Contralor —y siguiendo sus recomendaciones— el Municipio de San Juan presentó una demanda en cobro de lo indebido contra la Asociación y le reclamó la devolución de las sumas donadas para la celebración de los actos conmemorativos del Día de la Constitución durante 1999 y 2000. Las sumas reclamadas por el municipio ascienden a $190,122. La Asociación contestó la demanda oportunamente y —entre otras defensas afirmativas— adujo que el Municipio de San Juan estaba impedido de recobrar el donativo porque éste no fue ilegal y, en la alternativa, que el cobro no procedía por tratarse de un error de derecho.(3)
El mismo día que presentó su contestación a la demanda incoada por el Municipio de San Juan, la Asociación instó, a su vez, una demanda de injunction y sentencia declaratoria contra el Contralor. En su demanda, la Aso *156 ciación argüyó que la recomendación del Contralor es contraria a derecho y atenta contra la supervivencia de la institución.(4) Además, solicitó que se dictara una sentencia declaratoria que se consigne que la Asociación puede recibir fondos públicos y que se emitiera un interdicto para prohibir al Contralor que continuara instruyendo a los municipios a presentar demandas de cobro de dinero contra la Asociación por los donativos hechos para la celebración del Día de la Constitución. Luego de varios trámites procesales, el Tribunal de Primera Instancia desestimó la demanda de la Asociación, ya que ésta no planteaba un “caso o controversia” susceptible de adjudicación judicial.
Inconforme con dicho dictamen, la Asociación acudió al Tribunal de Apelaciones. Dicho foro acogió el argumento del Contralor de que sus hallazgos, opiniones y recomendaciones no constituyen una adjudicación formal y no afectan los intereses jurídicos de las personas o entidades auditadas. El tribunal basó su conclusión —en parte— en que la Oficina del Contralor carece de facultad legal para adjudicar, penalizar u obligar a la entidad o persona auditada a cumplir con sus recomendaciones. Además, el foro apelativo intermedio concluyó que la diferencia de opinión entre la Asociación y el Contralor sobre el alegado carácter partidista de dicha entidad no constituye una controversia justiciable, por lo que un pronunciamiento de su parte constituiría una opinión consultiva. En vista de lo anterior, confirmó la sentencia emitida por el foro primario.
Aún inconforme, la Asociación recurre ante nos y —en esencia— sostiene que erró el Tribunal de Apelaciones al determinar que no existe un caso justiciable que permita emitir un injunction y una sentencia declaratoria contra *157 los hallazgos contenidos en el informe del Contralor. Según la Asociación, la conclusión del foro apelativo, en términos de que las personas o entidades auditadas no están obligadas a seguir los señalamientos del Contralor, ignora el “sistema de derecho” que, según dicha entidad, es implantado por la Orden Ejecutiva 1998-16, promulgada el 17 de junio de 1998. Conforme a la interpretación de la Asociación, dicha Orden Ejecutiva obliga a todos los funcionarios auditados a cumplir con los señalamientos del Contralor, atender sus recomendaciones y corregir y evitar que se repitan.
Por último, en su alegato la Asociación hace referencia al Reglamento para la Administración del Plan de Acción Correctiva, Reglamento Núm. 26 de la Oficina del Contralor de Puerto Rico, 1 de noviembre de 1990 (Reglamento Núm. 26), el cual, según su argumento, fue validado por este Tribunal en Gobernador v. Alcalde de Manatí, 142 D.P.R. 619 (1997). A tales efectos, sostiene que conforme a nuestros pronunciamientos en dicha decisión, es mandatorio para todo funcionario cumplir con las recomendaciones o señalamientos del Contralor. Por su parte, en su comparecencia ante nos, el Contralor se reafirmó en que sus recomendaciones no constituyen una adjudicación formal, por lo que no afectan los intereses jurídicos de las personas o entidades auditadas y que, por lo tanto, no son revisables por los tribunales.
Examinado el recurso, expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
Como es sabido, nuestros tribunales existen únicamente para resolver controversias genuinas, surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que pueda afectar sus relaciones jurídicas. Ello implica que para que el tribunal intervenga *158 en un pleito, éste tiene que ser justiciable. A su vez, la doctrina constitucional de justiciabilidad establece como requisito la existencia de un “caso o controversia” real para el ejercicio válido del poder judicial. Es por ello que el requisito de “caso o controversia”, en sus diversas modalidades, es de índole jurisdiccional. Según hemos resuelto, si el caso no es justiciable, la determinación del tribunal sería una opinión consultiva. Véase E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).
Sobre el particular, una opinión consultiva ha sido definida como la ponencia legal emitida por un tribunal cuando no tiene ante su consideración un caso o una controversia justiciable y cuyo resultado, por lo tanto, no es obligatorio. Ortiz v. Panel F.E.I., 155 D.P.R. 219 (2001). Así pues, la doctrina de la opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto o bajo la hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros. En fin, a los tribunales les está vedado emitir opiniones consultivas sujetas a la revisión e interpretación de las otras ramas de gobierno. Ortiz v. Panel F.E.I., supra, págs. 251—252; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 721 (1980).
En el caso de autos, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones desestimaron la demanda presentada por la Asociación al concluir que no era justiciable, dado que no cumplía con el requisito de “caso o controversia”. Según dichos foros, las recomendaciones que hace el Contralor a las ramas del Gobierno sobre la legalidad del uso de fondos y bienes públicos son sólo eso, recomendaciones, y no están sujetas a la revisión judicial de forma inmediata y directa. Ambos foros concluyeron que los hallazgos, las opiniones y las recomendaciones del Contralor no constituyen una adjudicación formal, por lo que no pueden afectar los intereses jurídicos de las personas o entidades a quienes se refieren.
*159 En su comparecencia ante nos, la Asociación alega que la opinión del Contralor sobre el supuesto carácter partidista de ésta para fines de la Ley de Municipios Autónomos y su recomendación a varios municipios para que solicitasen el reembolso del dinero donado a la Asociación, atentan contra la supervivencia misma de la institución y su capacidad para obtener donativos en el futuro. Además, sostiene que los funcionarios que no sigan las recomendaciones del Contralor estarían cometiendo una infracción a la Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. see. 1801 et seq.). Basado en lo anterior, aduce que los tribunales tienen jurisdicción para atender su demanda, aclarar sus derechos e impedir que el Contralor continúe recomendando a los municipios que soliciten el reembolso del dinero donado a la Asociación.
En vista de ello, para resolver la presente controversia debemos examinar la figura del Contralor, aclarar cuál es la naturaleza de los hallazgos, las opiniones y las recomendaciones que hace en sus informes y determinar si éstos son revisables por los tribunales. De ser así, bajo qué circunstancias. Veamos.
HH 1—I
A. El cargo Contralor de Puerto Rico es de rango constitucional. Es una figura adoptada por la Convención Constituyente como parte de una serie de medidas dirigidas a proveer una sana administración de los fondos del erario. Véase Diario de Sesiones de la Convención Constituyente de Puerto Rico 920-925 (edición conmemorativa 2003). Véase, además, H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945 (1993). En particular, conforme a la See. 22 del Art. Ill de nuestra Constitución, L.P.R.A., Tomo 1, el Contralor fiscalizará las cuentas, los ingresos y los desembolsos del Gobierno de Puerto Rico, sus agencias, depen *160 dencias y municipios, para determinar si fueron realizados conforme a la ley. E.L.A. v. Asoc. Empleados Obras Púb. Mun., 126 D.P.R. 320 (1990). Su perfil y sus contornos constitucionales están plasmados en dicha disposición constitucional. Id.
Al adoptar la figura del Contralor, la Convención Constituyente decidió eliminar el cargo de Auditor establecido en la Carta Orgánica de 1917, que combinaba las funciones de “preaudit” y “postaudit”.(5) De esta forma, limitó las intervenciones del Contralor a la etapa “postaudit”, es decir, una vez efectuados los desembolsos. Por corresponder esa labor a la función fiscalizadora de la Rama Legislativa, se asignó el cargo de Contralor a dicha rama de gobierno. H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 960; Diario de Sesiones, supra.
Para implantar el mencionado mandato constitucional, la Ley Núm. 9 de 24 de julio de 1952 creó la Oficina del Contralor del Estado Libre Asociado de Puerto Rico y le confirió facultades investigativas y mecanismos para llevar a cabo investigaciones sobre las cuentas y los desembolsos de los fondos públicos. 2 L.P.R.A. sec. 71 et seq. Además, esta ley proveyó al Contralor un poder altamente disuasivo: dar publicidad a sus informes. 2 L.P.R.A. sec. 83; E.L.A. v. Asoc. Empleados Obras Púb. Mun., supra, pág. 327.
A su vez, con el fin de dar seguimiento a los informes del Contralor y establecer normas y procedimientos para que las entidades gubernamentales auditadas preparen y sometan los planes de acción correctiva, la Oficina del Contralor aprobó el Reglamento Núm. 26. En lo perti *161 nente, el Art. 9 de dicho reglamento provee el procedimiento para que el Contralor remita los informes de auditorías a otras agencias del Gobierno y les solicite que realicen una investigación sobre la situación referida e inicien los procesos civiles, criminales o administrativos que correspondan.
Ahora bien, ni la Constitución ni la legislación vigente facultan al Contralor para aplicar o tramitar directamente las sanciones por aquellas posibles violaciones de ley que surjan de sus investigaciones. En cambio, su encomienda se limita a informar estas irregularidades a la Asamblea Legislativa, al Gobernador y al Secretario de Justicia. E.L.A. v. Asoc. Empleados Obras Púb. Mun., supra, pág. 327. Véase, además, Diario de Sesiones, supra, pág. 925.
En este sentido, la facultad de encausar violaciones de índole criminal e instar acciones civiles ante los tribunales de justicia que suijan como resultado de cualquier intervención del Contralor en relación con los ingresos, las cuentas y los desembolsos gubernamentales, fue conferida mediante la Ley Núm. 17 de 8 de mayo de 1973 a la Oficina de Asuntos del Contralor, adscrita al Departamento de Justicia. 3 L.P.R.A. secs. 136(a) y 136(b). Asimismo, la Oficina de Etica Gubernamental debe estudiar los informes del Contralor para de identificar posibles violaciones éticas y tomar las acciones correspondientes. Art. 2.4(m) de la Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 1814(m).
De esta forma, aun cuando el Contralor puede referir sus informes a otras agencias del Gobierno y solicitar que éstas evalúen si, a la luz de sus hallazgos, procede instar alguna acción criminal, civil o administrativa, el Contralor no tiene facultad para obligar a las personas o entidades auditadas a cumplir con sus recomendaciones. Si bien la Oficina del Contralor aprobó el Reglamento Núm. 26 para dar seguimiento a sus recomendaciones y *162 establecer un mecanismo para que las entidades auditadas cumplan con un plan de acción correctiva, este reglamento no impone obligación alguna a la agencia auditada ni altera sus derechos. Tampoco contempla la imposición de sanciones penales o acciones civiles por el incumplimiento con sus disposiciones. La única acción que puede tomar el Contralor, aparte de publicar un informe, es referir sus hallazgos a las agencias correspondientes para que éstas entablen las acciones que estimen necesarias.
Esto es así, pues aunque el Contralor puede referir sus hallazgos a la Oficina de Etica Gubernamental, es a esa oficina —en última instancia— a la que le corresponde evaluar el referido del Contralor y determinar si, en efecto, ha ocurrido una violación a la Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico. Por lo tanto, la posibilidad de una acción administrativa contra algún funcionario por violaciones éticas que se desprendan de un informe del Contralor sólo podría surgir luego que la Oficina de Ética Gubernamental pase juicio sobre los hallazgos contenidos en dicho informe.(6)
Por otro lado, a pesar de que varios documentos —como la Orden Ejecutiva 1998-16 de 17 de junio de 1998 y la Carta Circular Núm. 86-4 de 30 de enero de 1987— de la Oficina de Ética Gubernamental resaltan la importancia *163 de las auditorías del Contralor para garantizar una sana administración gubernamental, éstos no otorgan un carácter obligatorio a sus señalamientos y recomendaciones.(7) De hecho, el Contralor carece de mecanismos legales para hacer cumplir sus recomendaciones pues, como señalamos anteriormente, su facultad está limitada a referir sus hallazgos a otras agencias. Claro está, el Contralor puede dar publicidad a sus informes, lo que resulta altamente persuasivo para los funcionarios que tienen que someterse al escrutinio y a la fiscalización públicos. Sin embargo, entendemos que ello, de por sí, no otorga un carácter vinculante a las recomendaciones del Contralor.
En el presente recurso, la Asociación acudió al foro judicial para solicitar la revisión de un informe emitido por el Contralor y que se aclarara su derecho a recibir donativos por parte de los municipios. Además, solicitó que se emitiera un injunction para impedir que el Contralor continúe instruyendo a los municipios a que insten acciones de reembolso contra la Asociación. Según ésta, los hallazgos y señalamientos hechos por el Contralor en su informe —en el cual concluye que la Asociación es una entidad partidista y que, como tal, no tiene derecho a recibir donativos de los municipios— afectan sus intereses jurídicos y su derecho a recibir donativos de los municipios, por lo que constituye una controversia justiciable ante los foros judiciales.
No obstante, tal como expresáramos anteriormente, estos señalamientos y recomendaciones no tienen carácter obligatorio para la Asociación ni para los municipios, por lo que ante este hecho innegable, es preciso concluir que no *164 son revisables por los tribunales. Esta conclusión se deriva tanto de la intención expresada por los delegados de la Convención Constituyente al crear el cargo de Contralor como de la doctrina de “caso o controversia”. Veamos.
B. Como se sabe, el Contralor carece de facultad legal para hacer cumplir sus recomendaciones. De hecho, fue la intención de los delegados de nuestra Convención Constituyente que no la tuviera. Así se infiere de un análisis del debate generado entre los delegados de la Convención Constituyente tras la presentación de una enmienda para que los tribunales revisaran los informes del Contralor. Eventualmente la referida enmienda fue retirada. Al oponerse a la enmienda, el delegado Negrón López expresó:
[E]l Contralor no va a tener la facultad de tomar decisiones a priori. Y la intención de este artículo es que el poder legislativo no le dé nunca la autoridad de tomar decisiones a priori. Por eso se crea el cargo para ejercer la función legislativa de fiscalizar a posteriori, o sea, de intervenir con las cuentas, después que los gastos hayan sido hechos. En ese sentido, las decisiones del Contralor no podrán ser, en forma alguna, decisiones que produzcan el efecto de requerir acción afirmativa de ningún funcionario del gobierno. (Enfasis suplido.) Diario de Sesiones, supra, pág. 925.
Es importante resaltar la facultad del Contralor para referir sus informes a agencias como el Departamento de Justicia y la Oficina de Ética Gubernamental para que éstas tomen las acciones correspondientes. Sin embargo, ni siquiera esas agencias están obligadas a seguir automáticamente las recomendaciones del Contralor. Tanto el Departamento de Justicia como la Oficina de Ética Gubernamental deben hacer sus propias investigaciones y evaluaciones para determinar si procede iniciar alguna acción penal, civil o administrativa contra la persona o entidad auditada.
De esta forma, las dependencias gubernamentales que reciben el informe con las recomendaciones del *165 Contralor podrían concluir —luego de hacer sus propias investigaciones y evaluaciones— que no procede iniciar una acción penal, civil o administrativa. En ese caso, ninguna parte podría alegar ante un tribunal que sus derechos se han visto afectados por el informe del Contralor y los hallazgos y señalamientos en él incluidos. Por el contrario, los intereses jurídicos de la persona o entidad auditada podrían estar en juego sólo si alguna de las agencias concernidas toma alguna acción afirmativa a la luz de los hallazgos y señalamientos hechos por el Contralor en su informe. Distinto al informe del Contralor, dicha acción de la agencia sí se revisaría ante el foro judicial y, de esta manera, los tribunales podrían pasar juicio —colateralmente— sobre los hallazgos y las recomendaciones del Contralor que hayan servido como base para la acción de la agencia concernida.(8)
Así, por ejemplo, si el Contralor refiere su informe al Departamento de Justicia y dicha agencia decide que hay base para proceder criminalmente contra el funcionario o la entidad auditada, entonces se presentaría ante los tribunales la acción criminal correspondiente. Dicho caso criminal proveería al foro judicial la oportunidad de pasar juicio sobre los señalamientos del Contralor que movieron al Departamento de Justicia a presentar los cargos criminales. En estas circunstancias, se cumpliría con el requisito de “caso o controversia”, ya que el tribunal tendría ante su consideración una controversia genuina, entre partes adversas, con un interés real en obtener un remedio judicial que pueda afectar sus relaciones jurídicas.
Lo mismo sucedería con un referido del Contralor a la Oficina de Etica Gubernamental. En ese caso, la Oficina de Etica Gubernamental deberá evaluar la supuesta violación ética referida por el Contralor y determinar si procede to- *166 mar alguna acción contra el funcionario señalado o si, por el contrario, no ocurrió tal infracción a la Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico. Al igual que expresamos en el ejemplo de una posible acción por parte del Departamento de Justicia, si la Oficina de Ética Gubernamental concluye que no ocurrió violación alguna y, por lo tanto, no procede iniciar ninguna acción, nadie podría acudir a los tribunales alegando que los hallazgos o señalamientos del Contralor afectan sus derechos. Eso sólo ocurriría si la Oficina de Ética Gubernamental toma alguna acción contra el funcionario o la entidad auditada. En tales circunstancias, la acción de la Oficina de Ética Gubernamental constituiría una controversia justiciable, en el contexto de la cual el tribunal podría evaluar los hallazgos del Contralor que iniciaron la investigación ética.
HH <
A la luz de lo anterior, resulta forzoso concluir que los hallazgos y las recomendaciones del Contralor no se revisan de forma inmediata o directa. Ello es así, ya que dichas recomendaciones no tienen carácter obligatorio y no pueden afectar los intereses jurídicos de los funcionarios o las entidades a quienes van dirigidos. Estas sólo son revisables en el contexto de un caso ante los tribunales que cumpla con el requisito de justiciabilidad de “caso o controversia”. De lo contrario, cualquier pronunciamiento por parte del foro judicial constituiría una opinión consultiva, lo cual está vedado a nuestros tribunales.
Por otra parte, las recomendaciones del Contralor también podrían ser revisadas por los tribunales cuando una persona o entidad que haya hecho un desembolso de fondos públicos, que a juicio del Contralor sea ilegal, intente recobrarlo por la vía judicial de aquella persona o entidad que lo percibió. Una acción de esa índole *167 fue, precisamente, lo que originó la demanda presentada por el Municipio de San Juan contra la Asociación. Como hemos señalado antes, luego de recibir el informe del Contralor, el Municipio de San Juan demandó a la Asociación para recobrar el dinero donado a dicha entidad para los actos de conmemoración del Día de la Constitución, por entender que —tal como concluyó el Contralor— el municipio no debió hacer tal donativo por ser la Asociación una entidad partidista, conforme a la Ley de Municipios Autónomos. Esta demanda plantea una controversia justiciable que permitirá al foro judicial pasar juicio sobre la corrección del señalamiento del Contralor relacionado al alegado carácter partidista de la Asociación y, de esta forma, determinar si procede la solicitud de reembolso instada por el Municipio de San Juan.(9)
Ahora bien, distinta es la situación de la demanda instada por la Asociación en contra del Contralor en el caso de autos. En el presente recurso, la Asociación pretende que el foro judicial revise unas determinaciones y recomendaciones que no son obligatorias para nadie y cuyo cumplimiento el Contralor no puede implantar. Ello sería contrario a la doctrina de justiciabilidad y la clara intención de los delegados de nuestra Convención Constituyente los cuales, al crear el cargo de Contralor, rechazaron proveer algún mecanismo para que sus hallazgos y recomendaciones fueran directamente revisables por los foros judiciales.
Por último, nuestros pronunciamientos en esta opinión no deben ser interpretados como un menosprecio al valor de los informes de auditoría que emite el Contralor y a la importancia de dicho cargo en la tarea de asegurar una sana administración de los fondos públicos. Por el contrario, al evitar que una persona o entidad pueda solicitar la revisión judicial de los hallazgos y las recomendaciones del Contralor, salvaguardamos las facultades constitucionales *168 de este funcionario y evitamos la intervención indebida de las demás ramas del Gobierno con la función fiscalizadora de la Oficina del Contralor.
En vista de ello, no erraron ni el Tribunal de Apelaciones ni el Tribunal de Primera Instancia al desestimar la demanda presentada por la Asociación contra el Contralor. Al así hacerlo, dichos foros cumplieron con su deber constitucional de no emitir opiniones consultivas para evitar que la Rama Judicial se convierta en asesora o consejera y que sus pronunciamientos estén sujetos a revisión e interpretación de las otras ramas de gobierno. Ortiz v. Panel F.E.I., supra.
V
Por los fundamentos que anteceden, se confirma la sentencia emitida en este caso por el Tribunal de Apelaciones, que ordenó la desestimación de la demanda presentada por la Asociación.

Se dictará Sentencia de conformidad.

 En lo pertinente al caso de autos, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 dispone que los municipios podrán ceder o donar fondos o bienes de su propiedad a cualquier entidad no partidista que opere sin fines de lucro y que se dedique a gestiones o actividades de interés público que promuevan el bienestar general de la comunidad. 21 L.P.R.A. sec. 4464.

 Entre los municipios señalados por el Contralor se encuentran Adjuntas, Barceloneta, Caguas, Carolina, Cayey, Dorado, Hatillo, Hormigueros, Lajas, Lares, Mayagüez, Peñuelas, Sabana Grande, San Juan, Vega Baja y Yabucoa.

 Cabe señalar que aún está pendiente ante los tribunales la demanda que instó el Municipio de San Juan contra la Asociación.

 La Asociación de Alcaldes de Puerto Rico (Asociación) advirtió en su demanda que como consecuencia del informe del Contralor, varios municipios le han solicitado el reembolso de dineros donados. Además de mencionar la acción judicial presentada por el Municipio de San Juan, la Asociación asegura que el municipio de Hormigueros hizo una solicitud similar mediante una carta y que los municipios de Lajas, Cayey y Dorado hicieron acercamientos verbales.

 El término “preaudit”, según utilizado por los delegados de nuestra Convención Constituyente, se refiere a la facultad que tenía el Auditor de la Ley Jones de hacer intervenciones antes de que se realizaran los desembolsos en cuestión. “Postaudit” se refiere a las intervenciones luego de que se han realizado los referidos desembolsos. Véase Diario de Sesiones de la Convención Constituyente de Puerto Rico 920-921 (edición conmemorativa 2003).

 En su alegato, la Asociación hace referencia a la Carta Circular 86-4 de 30 de enero de 1987^ de la Oficina de Ética Gubernamental. La referida carta dispone que la Oficina de Ética Gubernamental entenderá que el ignorar las recomendaciones del Contralor, sin justa causa, constituye una violación al Art. 3.2(B) de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 1822. No obstante, es menester aclarar que ello no se trata de una determinación automática. Esto es, la Oficina de Ética Gubernamental tomará esta determinación —no el Contralor— previa evaluación del hecho referido por la Oficina del Contralor y de los hallazgos señalados en el informe correspondiente.
De igual forma, la Asociación hace referencia a la Orden Ejecutiva 1998-16 promulgada el 17 de junio de 1998 —la cual no aplica ni a la Asociación ni a los municipios— para sostener su argumento de que las recomendaciones del Contralor tienen carácter obligatorio. No obstante, dicha Orden Ejecutiva sólo ordena a los funcionarios de la Rama Ejecutiva a atender los señalamientos del Contralor y evitar que se repitan. Ello de por sí no excluye que un funcionario pueda disputar algún señalamiento ni impone sanción alguna a los funcionarios que no cumplan con lo señalado por el Contralor.

 En cuanto a las Órdenes Ejecutivas, es menester recordar que son un instrumento disponible al Gobernador, quien descansa en su facultad de supervisión y dirección de los componentes de la Rama Ejecutiva. No obstante, esta facultad está limitada por las leyes aplicables. Véase Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876, 892 (2002). Sin embargo, las órdenes ejecutivas no aplican ni a los municipios ni a la Oficina del Contralor. Véanse: Op. Sec. Just. Núm. 5 de 27 de febrero de 1985; Op. Sec. Just. Núm. 14 de 13 de abril de 1989. Véase, además, W. Vázquez Irizarry, Los Poderes del gobernador de Puerto Rico y el uso de las órdenes ejecutivas, 76 (Núm. 4) Rev. Jur. U.P.R. 951, 1032 (2007).

 De hecho, en el contexto de revisiones de reglamentos, hemos distinguido entre la revisión directa y la revisión colateral de éstos. Véase Centro Unido Detallistas v. Com. Serv. Púb., 174 D.P.R. 174 (2008).

 Lo mismo sucedería con reclamos judiciales similares que pudieran presentar otros municipios contra la Asociación.