GOBERNADOR DE PUERTO RICO, HON. PEDRO ROSSELLÓ GONZÁLEZ, querellante y apelante, *v.* HON. JUAN AUBÍN CRUZ MANZANO, ALCALDE DE MANATÍ, querellado y apelado.

*Número:* AA-95-75                    *Resuelto:* 10 de marzo de 1997

*Carlos Lugo Fiol, Procurador General, y Lorraine J. Riefkohl, Procuradora General Auxiliar,* abogados del apelante; *José S. Brenes-La Roche,* abogado del apelado.

---

## SENTENCIA

Vistos los planteamientos de las partes y las disposiciones de ley pertinentes, el Tribunal concluye que la Comisión Estatal para Ventilar Querellas Municipales erró al decretar nulo el Reglamento para la Administración del Plan de Acción Correctiva Núm. 26, Oficina del Contralor, 1ro de noviembre de 1990 y, por ende, era admisible la prueba documental (anejos a informes complementarios del Plan de Acción Correctiva).

*Se revoca la resolución de la referida comisión y se ordena la devolución del expediente para la continuación ante dicho organismo de los trámites correspondientes compatibles con lo aquí resuelto.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Rebollo López emitió una opinión disidente. El Juez Asociado Señor Corrada Del Río no intervino.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

## — O —

Opinión concurrente emitida por el Juez Asociado Señor Negrón García, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton.

### I

El 30 de octubre de 1992, el entonces Gobernador de Puerto Rico, Hon. Rafael Hernández Colón, formuló unas querellas contra Juan Aubín Cruz Manzano, Alcalde del Municipio de Manatí, ante la Comisión Estatal para Ventilar Querellas Municipales (Comisión) por infringir, alegadamente, varias leyes.[1] En síntesis, le imputó haber desatendido deliberada y obstinadamente las recomendaciones de la Oficina del Contralor; violado leyes y reglamentos (entre ellos la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico) que estaba obligado a observar, y no cumplir con las acciones correctivas requeridas por la Oficina del Contralor.

El 21 de junio de 1994, Cruz Manzano contestó.[2] Luego

---

[1] Ley Núm. 142 de 21 de julio de 1960 (21 L.P.R.A. ant. sec. 1101 *et seq.*); Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. ant. sec. 2001 *et seq.*); Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*).

[2] La demora en su presentación fue motivada porque Cruz Manzano solicitó, el 13 de noviembre de 1992, que se desestimara la querella, ya que no se le había notificado, de acuerdo con el Art. 18.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4854), y el Art. 12 de las Reglas para el Procedimiento de la Comisión Estatal para Ventilar Querellas Municipales Núm. 3961, Comisión Estatal para Ventilar Querellas Municipales, 7 de agosto de 1989. Denegada ésta por la Comisión, Cruz Manzano fue en revisión al Tribunal Superior. Este último foro concluyó que aunque la Comisión no había adquirido jurisdicción sobre su persona por fallas ocurridas en su notificación, éstas eran subsanables y se negó a desestimar. Posteriormente, el 4 de agosto de 1993, se hizo una nueva notificación y continuaron los procedimientos. Inconforme, acudió nuevamente al Tribunal Superior quien, posteriormente, resolvió que no era necesario que se desestimara la querella original y se comenzara nuevamente el procedimiento, ya que de la sentencia anterior surgía que las fallas en la notificación podían subsanarse, volviéndose a notificar correctamente la querella.

de varios incidentes procesales, las partes presentaron el Informe de Conferencia con Antelación a la Vista el 31 de octubre de 1994. Surge que parte de la prueba documental consistiría de documentos presentados como anejos a informes complementarios del Plan de Acción Correctiva.[3]

El desfile de la prueba testifical comenzó el 10 de marzo de 1995. Durante el turno de prueba de la parte querellante —y mientras testificaba la Sra. Magda Hernández, Coordinadora del *Plan de Acción Correctiva* (en adelante P.A.C.) de la Oficina del Contralor— los abogados de Cruz Manzano objetaron cualquier testimonio relacionado con el P.A.C. Adujeron que el Reglamento para la Administración del Plan de Acción Correctiva Núm. 26, Oficina del Contralor, 1ro de noviembre de 1990 (Reglamento), era nulo por no haber sido aprobado y presentado en el Departamento de Estado, según requiere la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*).

Oportunamente, la Comisión resolvió que el referido reglamento afectaba al público en general y a los comerciantes en sus relaciones con el Municipio de Manatí, por lo cual requería los trámites de notificación, la publicación, los comentarios y la presentación en el Departamento de Estado. Por último, concluyó que no era admisible como evidencia el Reglamento ni la prueba obtenida en virtud de su aplicación.

Denegada la reconsideración por el foro administrativo, el Estado apeló ante nos.[4]

---

[3] El *Plan de Acción Correctiva* (en adelante P.A.C.) consiste de aquellas acciones que se habrán de realizar, a los fines de cumplir con las recomendaciones que emite la Oficina del Contralor, una vez culmina la auditoría de la agencia.

[4] Señala:

"ERRO LA COMISION PARA VENTILAR QUERELLAS MUNICIPALES AL DETERMINAR QUE EL REGLAMENTO SOBRE EL PLAN DE ACCION CORRECTIVA DE LA OFICINA DEL CONTRALOR ES NULO POR NO HABER SIDO APROBADO A TENOR CON LO DISPUESTO EN LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME.

## II

Antes de discutir los méritos del recurso, evaluemos la procedencia de una moción presentada por el querellado Cruz Manzano el pasado 21 de marzo de 1996, mediante la cual renuncia a las objeciones sobre la admisibilidad de prueba obtenida en virtud del reglamento impugnado y nos solicita que devolvamos el recurso al foro administrativo por el fundamento de ser académico. El Procurador General se opuso. Argumentó que: la apelación no la había presentado Cruz Manzano; determinar la validez del reglamento es esencial para el trámite que rutinariamente realiza la Contralor; ese curso dejaría en vigor la determinación de nulidad hecha por la Comisión. Resolvemos que el recurso no es académico.

En *Asoc. de Periodistas v. González*, 127 D.P.R. 704, 719 (1991), señalamos, " 'que un caso académico (*moot*) ... es "uno en que se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente ...' ".

Una controversia puede tornarse académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial tornan en ficticia su solución convirtiéndose así, en una opinión consultativa. *P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995); *Asoc. de Periodistas v. González*, supra; *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988).

En *Asoc. de Periodistas v. González*, supra, enfatizamos que al examinar el concepto de academicidad hay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente. Un

"ERRO LA COMISION PARA VENTILAR QUERELLAS MUNICIPALES AL RESOLVER QUE SIENDO NULO EL REGLAMENTO NUM. 26 DE LA OFICINA DEL CONTRALOR, ERA INADMISIBLE CUALQUIER EVIDENCIA OBTENIDA A TRAVES DE LA APLICACION DEL MISMO." Escrito de apelación, pág. 4.

caso se convierte en académico cuando su condición de controversia viva y presente se pierde con el paso del tiempo.

No obstante, entre las excepciones a la doctrina de academicidad figuran las siguientes: (1) si el caso presenta una cuestión *recurrente o susceptible de volver a ocurrir*; (2) cuando el demandado cambia la situación de hechos, pero ello no tiene visos de permanencia, y (3) los casos que aparentan ser académicos, pero que, por sus consecuencias colaterales, no son. Véanse: *Asoc. de Periodistas v. González*, supra; *P.P.D. v. Gobernador I*, supra; R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, 1ra ed., San Juan, Ed. C. Abo. P.R., 1986, Vol. I, págs. 122–126.

La renuncia de Cruz Manzano en esta etapa de los procedimientos, a sus objeciones sobre la admisibilidad de la prueba obtenida en virtud del reglamento, en nada altera el dictamen de la Comisión que decretó la nulidad del Reglamento Núm. 26, *supra*. Esa determinación tiene un efecto adverso y perjudicial a la Oficina del Contralor en el ejercicio de su poder de fiscalización. Nos enfrentamos a una controversia susceptible de repetirse, si consideramos el gran número de agencias y municipios que la Oficina del Contralor fiscaliza. Nada impedirá que en una etapa más avanzada el querellado Cruz Manzano insista en presentar el mismo argumento en relación *con otros documentos que se le requieran* y que hayan sido obtenidos como parte del informe.

## III

El primer señalamiento versa sobre la nulidad del Reglamento para la Administración del P.A.C. El error fue cometido.

Hoy día no se cuestiona seriamente la facultad de la Asamblea Legislativa para delegar el poder de reglamentación a organismos administrativos, siempre que dicha delegación esté acompañada de criterios amplios y generales que permitan gran discreción en el desarrollo y ejecución de la política pública. *Consejo Educación Superior v.*

*U.I.A.*, 120 D.P.R. 224 (1987); *M. & B. S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319 (1987); *López v. Junta de Planificación*, 80 D.P.R. 646 (1958).

Ese tipo de mandato implica, como medida fiscalizadora, que las agencias aprueben reglamentos que delimiten o precisen sus facultades al amparo de la ley para así evitar actuaciones ilegales o arbitrarias. En nuestra función revisora, los tribunales evaluaremos: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) *si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales*, y (5) si la reglamentación es arbitraria o caprichosa. *Aulet v. Depto. Servicios Sociales,* 129 D.P.R. 1 (1991); *Luan Investment Corp. v. Román*, 125 D.P.R. 533 (1990); *M. & B. S., Inc. v. Depto. de Agricultura*, supra.

Al aplicar estos criterios al caso de autos, vemos que el Reglamento Núm. 26, *supra*, fue aprobado conforme las disposiciones del Art. 14 de la Ley Núm. 9 de 24 de julio de 1952, según enmendada, 2 L.P.R.A. sec. 84, que confirió a la Oficina del Contralor la facultad de adoptar reglas y reglamentos, no incompatibles con las leyes vigentes y nuestra Constitución, necesarios para el mejor desempeño de sus funciones y, una vez promulgados, tendrán fuerza de ley.

La función básica del Contralor es fiscalizar las cuentas públicas una vez han ocurrido los desembolsos con el objetivo de determinar si fueron hechos conforme a la ley. 2 Diario Sesiones de la Convención Constituyente 920 y 925 (1961); *RDT Const. Corp. v. Contralor I*, 141 D.P.R. 424 (1996); *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993); *E.L.A. v. Asoc. Empleados Obras Púb. Mun.*, 126 D.P.R. 320 (1990). Para la consecución de esta tarea, la Ley Núm. 9, *supra*, entre otras disposiciones legales, le confiere al Contralor un amplio poder de investigar. Dentro de dicho poder se incluye la facultad para tomar juramentos y declaraciones, obligar la comparecencia de testigos y

la producción de documentos y objetos necesarios para el mayor conocimiento del asunto investigado, bajo apercibimiento de desacato. Véanse: Arts. 9 y 10 de la Ley Núm. 9, *supra*, 2 L.P.R.A. secs. 79 y 80; *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra. El Art. 3 de la Ley Núm. 9, *supra*, 2 L.P.R.A. sec. 73, señala que se faculta al Contralor a utilizar normas y métodos generalmente aceptados en la práctica corriente de la intervención de cuentas. Además, el Art. 11 de la citada ley, 2 L.P.R.A. sec. 81, le impone la obligación a las agencias, a las instrumentalidades del Gobierno y a los municipios de suministrar todos los documentos, expedientes e informes que le sean solicitados y permitir acceso a los funcionarios del Contralor a todos los archivos y documentos de las referidas agencias.

Concluimos que la Oficina del Contralor está autorizada por ley a aprobar reglamentos dentro de los amplios poderes que posee para investigar y redactar informes en los cuales se descubran irregularidades o violaciones de ley y, como derivado de esta función, *brindarle seguimiento a las agencias o instrumentalidades intervenidas para que no incurran en este tipo de conducta en el futuro.* Sabido es que los fondos públicos provienen de todos los contribuyentes del país y del más amplio *spectrum* político. Éstos no pertenecen a los funcionarios públicos que tienen las riendas del país durante determinado cuatrienio. *P.P.D. v. Gobernador I*, supra.

## IV

Aclarada esta facultad, examinemos si el reglamento cumplió con las normas procesales de la ley orgánica y de las leyes especiales. Durante 1988 fue aprobada la Ley Núm. 170, *supra* (en adelante L.P.A.U.). Dicha ley tuvo el propósito de uniformar los procedimientos, entonces existentes, ante los foros administrativos y a su vez promover una solución rápida, justa y económica.

La L.P.A.U., en su Sec. 2.1 y s.s., 3 L.P.R.A. sec. 2121 *et seq.*, exige el cumplimiento por parte de las agencias admi-

nistrativas de determinados requisitos al momento de aprobar una reglamentación. En esencia, se requiere notificar a la ciudadanía la intención de adoptar una reglamentación o modificación de ésta mediante la publicación —en un diario— de la propuesta reglamentación y la concesión de un plazo razonable para someter comentarios por escrito. Como regla general, en los casos de reglamentación administrativa, es facultad discrecional de la agencia celebrar vistas públicas, salvo que la propia ley así lo exija. Una vez la agencia adopta el reglamento, es requisito indispensable presentarlo ante la consideración del Departamento de Estado, el cual posee la facultad de rechazarlo, modificarlo o aprobarlo. En efecto, si el reglamento es aprobado por el Secretario de Estado, se publicará en un diario una síntesis de la reglamentación, la cual, excepto en casos de emergencia, comenzará a regir pasados treinta (30) días de su presentación. Se dispone que la agencia conservará un expediente con los documentos relacionados con la promulgación del reglamento. 3 L.P.R.A. sec. 2126.

Surge así un conjunto de normas de aplicación general que pueden interpretar e implantar la ley o una política pública. Así aprobadas, tienen fuerza de ley por carácter vinculante y determinantes de derecho, deberes u obligaciones de las personas sujetos a la jurisdicción de la agencia. D. Fernández, *Derecho Administrativo*, Colombia, Ed. Forum, 1993, Secs. 3.1–3.4.

No obstante, la propia ley reconoce excepciones a la definición de regla o reglamento, para los cuales las agencias *no tienen que cumplir* con los requisitos formales para adoptar un reglamento.

Así, pues, entre otras, quedan excluidas del procedimiento antes expuesto:

(1) *Reglas relacionadas con la administración interna de la agencia que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general.*
(2) Formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explica-

tivas y no tienen ningún efecto legal. 3 L.P.R.A. sec. 2102(1)(1)(2).

En el pasado hemos reconocido que "las agencias administrativas aprueban directrices (*guidelines*) u otras reglamentaciones menos formales (*interpretative rules*) que se adoptan para darle uniformidad a sus propios procesos, para pautar la discreción administrativa o para otros fines internos ...". *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866, 873 (1993). Los reglamentos, así promulgados, por disposición de ley quedan exentos del proceso de reglamentación formal.

La L.P.A.U., Ley Núm. 170, *supra*, fue adoptada con base en el modelo del *Administrative Procedure Act* (A.P.A.), 5 U.S.C. sec. 551 *et seq.*, y del *Model State Administrative Procedure Act* (1981) redactado por el *National Conference of Commisioners on Uniform State Laws.*

Las excepciones al proceso de reglamentación, reconocidas por nuestro ordenamiento, tienen su concordancia en la Sec. 553(b)(A) del *Administrative Procedure Act*, 5 U.S.C. sec. 553.([5])

---

([5]) La Sec. 553, en su *texto en inglés*, dispone así:

"*Sec. 553. Rule Making*

"(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

"(1) a military or foreign affairs function of the United States; or

"(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

"(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include-

"(1) a statement of the time, place, and nature of public rule making proceedings;

"(2) reference to the legal authority under which the rule is proposed; and

"(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

"Except when notice or hearing is required by statute, this subsection does not apply—

"(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice, or

"(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

Obsérvese que expresamente se excluyen del requisito de notificación y comentarios (*notice and comment*) las "reglas interpretativas, exposiciones generales o reglas de organización o práctica de las agencias ...". (Traducción nuestra.) 5 U.S.C. sec. 553(b)(A). Véanse: *Lincoln v. Vigil* 508 U.S. 182 (1993); *Nordvik v. Commissioner I.R.S.*, 67 F.3d 1489 (9no Cir. 1995). Las reglas procesales tienen como único objetivo describir los procedimientos internos de la agencia.

Un reconocido estudioso del derecho administrativo ha expresado que estas excepciones tienen el propósito de mantener la flexibilidad de los procedimientos ante el foro administrativo cuando no afectan los derechos de las partes. B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown and Co., 1991, Sec. 4.12, pág. 197. Véase, además, 1 *Davis and Pierce, Administrative Law Treatise* Secs. 6.4 y 7.10 (1994).

Así, pues, "no se requiere participación ciudadana cuando la agencia intenta establecer cómo cumplirá sus obligaciones".[6] (Traducción nuestra.) C.H. Koch, *Administrative Law and Practice*, Minnesota, Ed. West Publishing Co., 1985, Sec. 3.22, pág. 138.

---

"(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

"(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except-

"(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

"(2) interpretative rules and statements of policy, or

"(3) as otherwise provided by the agency for good cause found and published with the rule.

"(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

[6] "No se requiere participación pública cuando la agencia está tratando de determinar cómo realizará sus deberes." (Traducción nuestra.) C.H. Koch, *Administrative Law and Practice*, Minnesota, Ed. West Publishing Co., 1985, Vol. I, Sec. 3.22, pág. 138.

En *United States Dept. of Labor v. Kast Metals Corp.*, 744 F.2d 1145 (1984), al interpretarse las excepciones de la sec. 553(b) de la *Administrative Procedure Act,* supra, el Tribunal del 5to Circuito de Apelaciones señaló que la razón para exceptuar a las reglas que no son de carácter sustantivo del requisito de notificación y comentario (*notice and comment*) se debe a que, a juicio del Congreso, no se justifica el gasto de recursos y el tiempo requerido que conlleva el proceso de aprobar formalmente una regla, pues estas no tienen el efecto de afectar los deberes (guiar la conducta) del público a quienes va dirigida. Allí se utilizó el criterio del impacto sustancial (*substantial impact test*) para evaluar si una regla es de carácter sustantivo o procesal, pues la mera clasificación de la regla como procesal o sustantiva no es determinante. Si el impacto de la regla modifica derechos sustantivos o crea obligaciones, se trata de una regla sustantiva y debe seguirse el procedimiento de notificación y comentario. Véanse, además: *Commonwealth of Pennsylvania v. United States*, 361 F. Supp. 208 (M. D. Penn. 1973); *National Motor Freight Traffic Assn., Inc. et al. v. United States et al.*, 393 U.S. 18 (1968), y *Pharmaceutical Manufacturers Association v. Finch*, 307 F. Supp. 858 (D. Del. 1970), para casos en los cuales se ha utilizado este criterio.

En cuanto a estas excepciones, el reconocido tratadista Davis, en su tratado de Derecho Administrativo[7] discute las excepciones de carácter análogo incluidas en la Ley Federal de Procedimiento Administrativo Uniforme (A.P.A.), la cual sirvió como modelo para elaborar nuestra L.P.A.U. A esos efectos señala y cita del caso *Pacific Gas & Electric Co. v. Federal Power Com'n*, 506 F.2d 33, 38 (Cir. D.C. 1974), lo siguiente:

Una regla sustantiva debidamente aprobada establece un patrón de conducta que tiene fuerza de ley ....

---

[7] 1 *Davis and Pierce, Administrative Law Treatise* Sec. 6.2 (3ra ed. 1994).

Una declaración general de política, por otro lado, no establece una "norma obligatoria". No determina de forma final las cuestiones o los derechos a los que va dirigida. La agencia no puede aplicar o depender de una declaración de política general ya que la declaración de política general únicamente proclama las intenciones tentativas de la agencia para el futuro. (Traducción nuestra.)

Por otro lado, en *American Hosp. Ass'n. v. Bowen*, 834 F.2d 1037 (Cir. D.C. 1987), se discute ampliamente la Sec. 553(b)(A) de la A.P.A. y se señala lo siguiente:

El propósito claro de la tercera excepción del art. 553 en lo que se refiere a las "reglas de práctica o procedimiento para la organización de las agencias", es asegurarse de que "las agencias mantengan cierta libertad para organizar sus operaciones internas". *Batterton*, 648 F.2d, pág. 707.

Para expresar de manera útil la característica crítica de la excepción, podemos decir que ésta cubre aquellas acciones de las agencias que no alteran propiamente los derechos o intereses de las partes, aunque pueda alterar la forma en que las partes se presentan a sí mismas o presentan sus puntos de vista a la agencia. (Citas omitidas y traducción nuestra.) Íd. Véanse, además: *JEM Broadcasting Co., Inc. v. F.C.C.*, 22 F.3d 320 (Cir. D.C. 1994); *Neighborhood TV Co., Inc. v. F.C.C.*, 742 F.2d 629, 637 (Cir. D.C. 1984); *Batterton v. Marshall*, 648 F.2d 694, 707 (Cir. D.C. 1980).

## V

Conforme la normativa antes expuesta, precisaremos la naturaleza del Reglamento Núm. 26 sobre el Programa de Acción Correctiva.

El Art. III del Reglamento para la Administración del Plan de Acción Correctiva, *supra*, pág. 2, señala que su propósito es "[e]stablecer los procedimientos de seguimiento mediante los cuales las agencias intervenidas por la Oficina del Contralor darán cumplimiento efectivo a las recomendaciones contenidas en el Informe de Intervención del Contralor".

Un examen integral de sus disposiciones revela que la Oficina del Contralor estableció *un mecanismo uniforme*

para poder determinar si las agencias intervenidas están cumpliendo con sus recomendaciones. Se pretende lograrlo mediante la presentación de un *informe escrito.* En éste, la agencia intervenida expone las medidas adoptadas y para evitar incurrir en las irregularidades señaladas. En esencia, el reglamento lo único que establece son los términos en los que deberá presentarse ante la Oficina del Contralor el P.A.C.,[8] de ser necesaria la presentación de informe suplementario y, por último, la coordinación entre otras agencias del Estado y la Contralor. No contiene la imposición de sanciones penales o civiles por el incumplimiento de sus disposiciones. Únicamente, reconoce la facultad de la Oficina del Contralor para recurrir "a los remedios disponibles en ley para compeler a la presentación del [Plan de Acción Correctiva]". Art. VI(D) del Reglamento para la Administración del Plan de Acción Correctiva, *supra,* pág. 6. Nótese que la obligación de cumplir con las recomendaciones señaladas en el Informe de la Contralor no *surge del reglamento,* sino de otras disposiciones legales que le imponen al municipio utilizar los fondos y la propiedad pública para fines públicos, de acuerdo con los principios de sana administración pública. En este sentido, no podemos concluir que el reglamento impone a la agencia intervenida —aquí el Municipio de Manatí— obligaciones o que altere sus derechos, pues, independientemente de la existencia del reglamento o no, la agencia intervenida debe cumplir con las recomendaciones de la Contralor y suministrarle todos los documentos, expedientes e informes solicitados pertinentes al descargo de su función fiscalizadora.[9] Tampoco afecta las relaciones entre el municipio, sus funcionarios o suplidores, como erróneamente concluyó la Comisión para Ventilar Querellas Municipales.

---

[8] La agencia dispone de un término de noventa (90) días para presentar el P.A.C., contados a partir de la fecha de recibo del Informe de Intervención del Contralor.

[9] Art. 11 de la Ley Núm. 9 de 24 de julio de 1952 (2 L.P.R.A. sec. 81); Art. 4 de la Ley Núm. 43 de 25 de mayo de 1973 (2 L.P.R.A. sec. 91); Art. 6.005 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4255).

La necesidad de verificar el cumplimiento de esas recomendaciones es indispensable para el más efectivo desempeño de la facultad constitucional de fiscalización de la Contralor. Carente de un mecanismo de verificación como el informe requerido, la función fiscalizadora se tornaría inoperante y sin valor.

¿Qué ocurre si se incumple con sus disposiciones reglamentarias? Ante esa situación, el reglamento dispone que la Oficina del Contralor recurrirá a los remedios disponibles en ley para compeler la presentación del informe. Sin embargo, no visualiza la imposición de sanciones penales o civiles, pues a la Contralor no le han sido delegados estos poderes. Esa función ha sido encomendada y delegada al Poder Ejecutivo, a través de varias agencias como son el Departamento de Justicia, el de Hacienda y, en particular, la Comisión Ejecutiva sobre Informes del Contralor, cuya función es determinar el curso de acción que ha de seguirse en relación con cualquier asunto que hubiese sido objeto de informe y especialmente cualquier recomendación a la cual no se le haya dado cumplimiento o adoptado acción para cumplirla. Art. 4 de la Ley Núm. 9, *supra*, 2 L.P.R.A. sec. 91. Corresponde al Departamento de Justicia decidir si presenta acción judicial contra la agencia intervenida o sus funcionarios concernidos.

En resumen, el Reglamento para la Administración del Plan de Acción Correctiva Núm. 26, *supra*, sólo establece normas para la administración interna en la Oficina del Contralor, de aquellas recomendaciones vertidas en sus informes de auditoría. En vista de ello, cualifica como una de las excepciones a la definición de regla o reglamento según la L.P.A.U. 3 L.P.R.A. sec. 2102(l)(1). Como podrá observarse, la propia ley exceptúa de los requisitos establecidos para la adopción de reglamentos, aquellos de administración interna que no afecten las prácticas o los procedimientos disponibles para el público en general. Precisamente el reglamento impugnado en autos es uno adoptado por la Oficina del Contralor para brindarle seguimiento interno a los Planes de Acción Correctiva sometidos por las depen-

dencias gubernamentales auditadas. Por otra parte, el procedimiento seguido fue contra el Municipio de Manatí —dependencia gubernamental— y su Alcalde en su capacidad oficial. De ninguna manera el reglamento impugnado afecta derechos o procedimientos disponibles para el público en general, debido al carácter público de la entidad intervenida. Esta distinción resulta crucial. No podemos ignorarla y asemejar erróneamente, a los fines de derechos y procedimientos, una entidad gubernamental con un ciudadano particular. Como consecuencia, el procedimiento para la promulgación del Reglamento Núm. 26, *supra*, no estaba sujeto a los requisitos de publicación, notificación y comentarios.

Erró la Comisión para Ventilar Querellas Municipales al decretar su nulidad; la prueba obtenida a su amparo es válida.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Concurro con el dictamen que se anuncia en la sentencia del Tribunal. Estoy de acuerdo en que no es nulo el Reglamento para la Administración del Plan de Acción Correctiva de la Oficina del Contralor (en adelante Reglamento) y en que, por ende, tampoco es nula la evidencia obtenida en virtud de su aplicación al caso de autos.

Ello es así por la sencilla razón de que, contrario a lo resuelto por la Comisión para Ventilar Querellas Municipales, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.) no aplica de forma alguna a los reglamentos de la Oficina del Contralor.

Como se sabe, la Sec. 22 del Art. III de nuestra Constitución, L.P.R.A., Tomo 1, crea el cargo de Contralor, *adscrito a la Rama Legislativa. In re Ríos*, 112 D.P.R. 353, 361

(1982); 4 *Diario de Sesiones de la Convención Constitu-*
*yente* 2588 (1961).

En numerosas ocasiones hemos señalado que "en nues-
tro ordenamiento, el cargo de Contralor tiene génesis
constitucional. El informe de la Comisión de la Rama Le-
gislativa de la Convención Constituyente recomendó su
creación como parte de una serie de medidas dirigidas a
proveer una sana fiscalización de las cuentas, ingresos y
desembolsos gubernamentales. ... Por corresponder esa la-
bor a la función fiscalizadora *de la rama legislativa,* se
asignó el cargo de Contralor a esa rama". Véanse: *E.L.A. v.
Asoc. Empleados Obras Púb. Mun.,* 126 D.P.R. 320 (1990);
*Zequeira v. Universidad de P.R.,* 76 D.P.R. 338, 343 (1954);
Diario de Sesiones, *supra,* Vol. 2, págs. 920 y 925.

En vista de lo anterior, es evidente que la Oficina del
Contralor no es una "agencia" sujeta a la L.P.A.U. La Ofi-
cina del Contralor no es un organismo administrativo como
aquellos para cuya regulación se aprobó la L.P.A.U.([1]) Por
ello, no es correcto aplicar al Reglamento en cuestión las
normas sobre reglamentos que fija la L.P.A.U.

Por ende, como la L.P.A.U. sencillamente no le aplica a
la Oficina del Contralor, erró la Comisión para Ventilar
Querellas Municipales al decidir que era nulo el Regla-
mento por no haber sido aprobado conforme requiere la
L.P.A.U.

— O —

Opinión disidente emitida por el Juez Asociado Señor Re-
bollo López.

Nadie discute la facultad de la Oficina del Contralor
para adoptar reglas y reglamentos. 2 L.P.R.A. sec. 84. Lo
que sí está en controversia en el presente caso es si dicha
oficina, luego de aprobar internamente el llamado Regla-

---

([1]) En efecto, la propia Ley de Procedimiento Administrativo Uniforme del Es-
tado Libre Asociado de Puerto Rico (L.P.A.U.) en su Sec. 1.3 (3 L.P.R.A. sec. 2102),
expresamente excluye de dicha ley a la Asamblea Legislativa.

mento para la Administración del Plan de Acción Correctiva Núm. 26, (en adelante el Reglamento) Oficina del Contralor, 1ro de noviembre de 1990, venía obligada a cumplir con los requisitos que establece la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico —en adelante L.P.A.U.— para la aprobación de reglamentos; esto es, y en síntesis, notificación a la ciudadanía y al Departamento de Estado y la posterior publicación del reglamento en un diario de circulación general.

Contrario a lo que resuelve una mayoría de los integrantes del Tribunal, somos del criterio que el mencionado "reglamento" afecta, *de manera sustancial*, los derechos y obligaciones de las personas a las cuales va dirigido; razón por la cual entendemos que el mismo debió ser sometido al procedimiento que establece la citada L.P.A.U. Esto es, rechazamos la determinación de esa mayoría a los efectos de que dicho "reglamento" no es otra cosa que unas "reglas interpretativas" o unas de "organización o práctica" de la Oficina del Contralor.

## I

De entrada, brevemente discutimos la interrogante relativa a la aplicación, o no, de las disposiciones de la L.P.A.U. a la Oficina del Contralor. Al igual que dicha mayoría, somos del criterio que la referida Ley en efecto es aplicable a la referida Oficina.

La Asamblea Legislativa aprobó la L.P.A.U., Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*), para, entre otros propósitos, sistematizar y crear un cuerpo uniforme de reglas mínimas a ser observadas por las agencias al formular reglas y reglamentos. Dicho estatuto es de aplicación a todas las agencias que no están expresamente exceptuadas en el mismo.[1]

---

[1] La Sec. 1.3 (3 L.P.R.A. sec. 2102) define *agencia* como "... cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona,

Si analizamos con detenimiento la definición que en la citada sección de la L.P.A.U. ofrece el legislador de lo que constituye "agencia", *surge claramente que su determinación gira en torno a las funciones que la agencia en cuestión esté legalmente autorizada a llevar a cabo.* Es decir, la disyuntiva de si una agencia, cuerpo, instrumentalidad, funcionario, oficina, etc., cae o no dentro del marco de aplicación de la L.P.A.U., por ser o no considerada una "agencia", *ha de resolverse en atención a sus propósitos y/o funciones: e.g. "funciones de reglamentar, investigar, o que pueda emitir una decisión ...".* 3 L.P.R.A. sec. 2102(a).

La Oficina del Contralor del Estado Libre Asociado de Puerto Rico, se creó mediante la Ley Núm. 9 de 24 de julio de 1952 (2 L.P.R.A. sec. 71 *et seq.*), la cual responde principalmente a la Asamblea Legislativa. El Art. III, Sec. 22 de la Constitución del E.L.A., L.P.R.A., Tomo 1, establece que el Contralor fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios. Dicho funcionario, además, rendirá informes anuales y todos aquellos otros que le sean requeridos por la Asamblea Legislativa o el Gobernador. Como funciones adicionales a éstas, la Asamblea Legislativa le asignó la facultad para adoptar y promulgar las reglas y reglamentos, *no sólo para su funcionamiento interno, sino para aquéllos que sean necesarios para el mejor*

---

entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar, o adjudicar, excepto:

"(1) El Senado y la Cámara de Representantes de la Asamblea Legislativa

"(2) La Rama Judicial

"(3) La Oficina Propia del Gobernador

"(4) La Guardia Nacional de Puerto Rico

"(5) Los gobiernos municipales o sus entidades o corporaciones

"(6) La Comisión Estatal de Elecciones

"(7) El Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos

"(8) La Comisión para la Celebración del Quinto Centenario del Descubrimiento de América y Puerto Rico."

*desempeño de sus funciones.* Dichos reglamentos tienen *fuerza de ley* una vez promulgados. 2 L.P.R.A. sec. 84.

Por otro lado, es preciso notar que aun cuando el legislador expresamente excluyó de la aplicación de sus disposiciones a la Asamblea Legislativa y que la Oficina del Contralor responde principalmente a la Asamblea Legislativa, *la misma no es la Asamblea Legislativa y tampoco forma parte de ésta.* Somos del criterio que de haber sido la intención del legislador excluir a la Oficina del Contralor del ámbito de la ley, *la habría excluido expresamente, tal y como lo manifestó respecto a la Rama Judicial.* 3 L.P.R.A. sec. 2102.

## II

Entendemos, al igual que los tres (3) Jueces que constituyen una mayoría, que "[l]a función básica del Contralor es fiscalizar las cuentas públicas una vez han ocurrido los desembolsos con el objetivo de determinar si fueron hechos conforme a la ley".[2] De igual modo, sabemos que la Oficina del Contralor tiene la facultad legal de aprobar reglamentos dentro de sus amplios poderes "para investigar y redactar informes en los cuales se descubran irregularidades o violaciones de ley y, como derivado de esta función, *brindarle seguimiento a las agencias o instrumentalidades intervenidas para que no incurran en este tipo de conducta en el futuro".* (Énfasis en el original.)[3]

No obstante esta facultad, en el proceso de promulgación de dichos reglamentos la Oficina del Contralor *no* está exenta del cumplimiento con las disposiciones de la L.P.A.U. referentes a los requisitos mínimos procesales con los cuales ha de cumplir de forma que los reglamentos que promulga tengan validez. Estos son, en síntesis: notificar a la ciudadanía su intención de adoptar una reglamentación o enmendar una vigente, mediante la publicación en un

---

[2] Opinión concurrente del Juez Asociado Señor Negrón García, págs. 625–626.
[3] Íd.

diario de circulación general de un resumen de los propósitos de la propuesta reglamentación y la concesión de un plazo de treinta (30) días para someter comentarios por escrito. Una vez adoptado el reglamento por la agencia, es requisito indispensable presentarlo ante el Departamento de Estado, el cual puede aprobarlo, devolverlo para su corrección, u ordenar las correspondientes enmiendas al mismo.

En el caso de autos, el Procurador General de Puerto Rico, en representación del Gobernador de Puerto Rico, argumenta que el referido reglamento, "por concernir solamente el trámite *interno entre dicha Oficina y el alcalde aquí querellado*, es un reglamento interno del Gobierno de Puerto Rico que no requiere su publicación de acuerdo a la Ley Núm. 170". (Énfasis suplido.) Escrito de Apelación, pág. 5. Alega, además, que "el propósito de la L.P.A.U. es *reglamentar las relaciones de las agencias allí incluidas con respecto al impacto de los procesos de esas agencias sobre el público en general*, o sea, los ciudadanos individuales y los ciudadanos organizados en empresas comerciales y de otro tipo". (Énfasis en el original.) Íd. *No* le asiste la razón.

El propósito primordial de la L.P.A.U. es establecer uniformidad entre las agencias administrativas del gobierno *con respecto a las garantías procesales mínimas que deben reconocer en sus procedimientos*, para así evitar actuaciones arbitrarias de las agencias tanto en sus funciones cuasi-legislativas como en las cuasi-judiciales. La propia L.P.A.U. establece excepciones en relación al cumplimiento del requisito de notificación, comentarios y presentación en el Departamento de Estado, en el proceso de promulgación y aprobación de reglamentos. 3 L.P.R.A. sec. 2102(1)(1). Esta sección define el término "regla o reglamento" como:

"... cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia. El término incluye la enmienda,

revocación o suspensión de una regla existente. *Quedan excluidos* [entre otras] de esta definición:

(1) Reglas relacionadas con la administración interna de la agencia que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general.

(2) Formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explicativas y no tienen ningún efecto legal. (Énfasis suplido.) 3 L.P.R.A. sec. 2102(l).

La razón para exceptuar cierto tipo de "reglamentación" del cumplimiento procesal mínimo exigido en la L.P.A.U. es clara: al no estar involucrados intereses ni derechos de terceros, no es menester la publicación ni la concesión de la oportunidad a ser oído, ya que esto conlleva un gasto y una movilización extraordinaria e inmeritoria por parte del Estado.

Este tribunal, en el caso de *Agosto Serrano v. F.S.E.*,[4] se expresó al respecto indicando, en lo pertinente, que:

No tenemos ante nos una reglamentación típicamente de *naturaleza legislativa*, como son aquellas [sic] que una agencia administrativa formula al amparo de una delegación expresa de la Asamblea Legislativa, para darle contenido substantivo detallado a alguna norma estatutaria general o de algún otro modo complementar normativamente el esquema legislativo. Sabido es que tales reglamentaciones de naturaleza legislativa tienen fuerza de ley, y si son constitucionalmente válidas vinculan inexorablemente. Pero en ocasiones, como es el caso del reglamento ante nos, las agencias administrativas aprueban directrices (*guidelines*) u otras *reglamentaciones menos formales* (*interpretative rules*) que se adoptan para darle uniformidad a sus propios procesos, para pautar la discreción administrativa o para otros fines internos y que, aunque son de aplicación general y vinculan administrativamente, pueden ser modificadas judicialmente. (Énfasis suplido y en el original, y escolios omitidos.)

De un examen somero del reglamento ante nuestra consideración, *es evidente que aquí en efecto se trata de una reglamentación de naturaleza legislativa y no interna.* El

---

[4] 132 D.P.R. 866, 872–873 (1993).

Reglamento para la Administración del Plan de Acción Correctiva añade contenido sustantivo y complementa normativamente la legislación ya existente relativa al deber de la Oficina del Contralor de investigar y descubrir irregularidades; reglamenta la manera de hacerlo; y define las obligaciones y deberes de las entidades gubernamentales intervenidas por dicho cuerpo investigador.

El Art. III del Reglamento para la Administración del Plan de Acción Correctiva, ante, pág. 2, en el cual se expresa el propósito de la promulgación del mismo,(⁵) dispone: "[e]stablecer los procedimientos de seguimiento mediante los cuales *las agencias intervenidas por la Oficina del Contralor darán cumplimiento efectivo* a las recomendaciones contenidas en el Informe de Intervención del Contralor". (Énfasis nuestro). Saltan a la vista las obligaciones a las cuales quedan afectas las agencias intervenidas; por lo que el proceso de notificación, publicación y presentación de dicho reglamento es indispensable para su validez y, por consiguiente, para su cumplimiento por parte de las agencias intervenidas.(⁶)

Además, según surge del Art. II (Base Legal) del Reglamento, *supra*, pág. 1, es en virtud del Art. 3 de la Ley Núm. 9 de 24 de julio de 1952 (2 L.P.R.A. sec. 73) que la Oficina del Contralor está facultada "a utilizar normas y métodos generalmente aceptados en la práctica corriente de la intervención de cuentas. Dichas normas y métodos como la función misma de fiscalización incluyen el seguimiento planificado y sistemático del cumplimiento de las recomendaciones contenidas en los informes de intervención del

---

(⁵) Idéntico requisito es exigido por la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.). Cabe notar la peculiaridad de que dudosamente un reglamento interno —el cual sólo rige a los empleados de la agencia promulgadora internamente— *contenga todos y cada uno de los requisitos exigidos por la L.P.A.U. para la adopción y promulgación uniforme de reglamentos;* i.e., base legal que autoriza su adopción, explicación breve de sus propósitos, fecha de su aprobación y fecha de vigencia.

(⁶) Entiéndase por agencia intervenida, según definido en dicho artículo del reglamento: departamento, agencia, oficina y cualquier otra dependencia ejecutiva, organismos de las ramas legislativa y judicial, municipio o cualesquiera de sus subdivisiones políticas, y corporaciones públicas o cualesquiera de sus subsidiarias.

Contralor". Acto seguido, y en virtud del cual existe el reglamento hoy en controversia, aparece citado el Art. 14 de la referida Ley Núm. 9 en el que se faculta al Contralor "para adoptar y promulgar las reglas y reglamentos no incompatibles con las leyes vigentes y la Constitución del Estado Libre Asociado de Puerto Rico, que sean necesarios para el mejor desempeño de sus funciones .... [Éstas] reglas y reglamentos tendrán fuerza de ley una vez sean promulgados". 2 L.P.R.A. sec. 84.

Es a la luz de lo anteriormente expuesto que sostenemos que el reglamento, cuyo carácter se encuentra en controversia, *es de naturaleza legislativa.* Evidentemente, el mismo *suplementa normativamente* la legislación ya existente en virtud de la cual la Oficina del Contralor ejerce sus funciones y facultades. Dicho de manera más sencilla, la función primordial de la Oficina del Contralor (fiscalizar los ingresos, cuentas y desembolsos del Estado, sus agencias e instrumentalidades los municipios) queda *complementada* por el Reglamento para la Administración del Plan de Acción Correctiva —*esto es, el mismo añade o da seguimiento a la intervención iniciada*—. Pero más importante aún, *dicho reglamento, además, guía la conducta de las agencias intervenidas y las obliga a su cumplimiento.*

El tratadista de Derecho Administrativo, Bernard Schwartz, nos ilustra al respecto señalando, en lo pertinente, que:

> ... the APA requirements apply only to substantive rules; there is an express exemption for "interpretive rules, general statements of policy, [and] rules of agency organization, procedure, or practice." This exception seeks to preserve agency flexibility *where substantive rights are not at stake.*[7] (Énfasis suplido.)

Por otro lado, el comentarista Charles Koch, al expandir dicha explicación, expresa:

---

[7] B. Schwartz, *Administrative Law*, 3ra ed., Ed. Little, Brown and Co., 1991, Sec. 4.12, pág. 197.

The phrase excepting "rules of agency organization, procedure or practice" excepts from public procedures rules that might be generally classed as "procedural." Public participation is not required where the agency is trying to determine how it will perform its duties.[8]

Koch cita, en particular, el caso de *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1113–1114 (Cir. D.C. 1974), en el cual se intentó definir lo que constituye reglamentación interna o procesal. El tribunal en el referido caso, señaló, en lo pertinente:

In keeping with the type of action Congress sought to exempt, a matter "relating to practice or procedure" means technical regulation of the form of agency action and proceedings. *This category too, should not be deemed to include any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority ....*

... [A]dherence to congressional purpose counsels a construction of this exemption that *excludes from its operation action which is likely to have considerable impact on ultimate agency decisions.* If the regulations ... are likely to produce ... decisions different from those which alternatives would be likely to produce, then the exemption should not apply. ... [A] regulation ... which merely prescribes order and formality in the transaction of ... business, is clearly within the procedure and practice exemption. (Énfasis suplido.)

Es claro que *no* estamos ante una reglamentación que prescribe meramente el orden y las formalidades de las transacciones dentro de la Oficina del Contralor. *Nos enfrentamos a una reglamentación cuyo efecto último revierte en la toma de una decisión por parte de la Oficina del Contralor en cuanto al curso de acción a seguir respecto a la agencia intervenida.* Esto es, el incumplimiento de la agencia o el cuerpo gubernamental intervenido, al no someter el Plan de Acción Correctiva, tiene como resultado que la Oficina del Contralor se vea obligada a recurrir a "los reme-

---

(8) C.H. Koch, *Administrative Law and Practice*, Minnesota, Ed. West Publishing Co., 1985, Vol. 1, Sec. 3.22, pág. 138. La Mayoría, al citar a Koch, pierde de vista que precisamente a lo que se refiere es a reglas de *funcionamiento interno*, que de hecho no incumben a las demás agencias, *vis à vis* el caso en que el reglamento lo que determine sean los deberes de otra agencia frente a la que promulga el mismo.

dios disponibles en ley para compeler a la presentación de dicho informe".(⁹) Art. VI(D) del Reglamento, ante, pág. 6.

Es insostenible la posición del Procurador General, *adoptada por este Tribunal,* a los efectos de que "el Reglamento no establece obligaciones sancionables por violaciones al mismo".(¹⁰) El Procurador General argumenta que la Oficina del Contralor sólo refiere y recomienda a la Rama Ejecutiva que tome la acción legal correspondiente ante el incumplimiento de una agencia intervenida; en vista de lo cual, según aduce el Procurador General, no es hasta que la Rama Ejecutiva decide actuar, en el ejercicio de su discreción, que la agencia intervenida queda "por primera vez [enfrentada] ante un reclamo que podría resultar en una obligación legal que podría alterar sus relaciones jurídicas".(¹¹) *Dicha posición es totalmente incorrecta.*

A partir de la promulgación del reglamento, la agencia investigada queda expuesta a la obligación legal de cumplir con el mismo y, por consiguiente, a responsabilidad legal si lo incumple o ignora. Evidencia de ello es la situación que hoy se ha presentado ante nos; esto es, el Alcalde Cruz Manzano se encuentra hoy en la necesidad de defenderse por, entre otras cosas, incumplir las recomendaciones de la Oficina del Contralor, o sea, por incumplir las obligaciones dispuestas en el Reglamento para la Administración del Plan de Acción Correctiva *que venía obligado a observar.*

En síntesis, *no* podemos estar de acuerdo con la posición de estos tres (3) Jueces a los efectos de que este Reglamento no afecta los derechos y obligaciones de terceros. Si suscribiéramos la posición propuesta por el Procurador General —*adoptada por la Mayoría*— de que es interno un reglamento porque sólo regula el comportamiento entre la

---

(⁹) Incluso en el segundo requerimiento provisto en el reglamento, a ser expedido por la Oficina del Contralor ante el incumplimiento de la agencia intervenida, se le apercibe a la misma que "el incumplimiento con este nuevo plazo conllevará la aplicación de aquellos remedios provistos por ley".

(¹⁰) Escrito de apelación, pág. 7.

(¹¹) Íd., pág. 12.

Oficina del Contralor y la agencia intervenida por ésta, entonces ninguno de los reglamentos promulgados por la referida Oficina tendría que cumplir con los requisitos de la L.P.A.U.; ello por la sencilla razón de que dicha Oficina únicamente interviene con agencias y funcionarios gubernamentales. Esto, aun cuando el mismo establezca, *como es el caso aquí,* obligaciones y deberes a los cuales queda sujeta la agencia, o funcionario, y la responsabilidad a la cual quedan expuestos, en caso de incumplirlo, según la disposición legal aplicable. *No podemos suscribir tan absurdo razonamiento y resultado.*[12]

Nos preguntamos: ¿no crea obligaciones el reglamento en controversia cuando la agencia, o funcionario, intervenido viene *en la obligación,* en virtud del mismo, de someter un Plan de Acción Correctiva dentro de un término específico? ¿No es suficiente el efecto que, sobre los deberes y derechos sustantivos de la agencia intervenida, tiene dicho reglamento al exponerla a "la aplicación de aquellos remedios provistos por ley" en el caso de incurrir en incumplimiento del mismo? Somos de la opinión, sin dudas al respecto, de que ambas interrogantes tienen que ser contestadas en la afirmativa.

Es por ello que disentimos.

---

[12] En ocasiones, no importa cuánto esfuerzo uno haga, hay personas que sencillamente *no* entienden. La excepción que establece el subnciso (1) de la Sec. 1.3(1), 3 L.P.R.A. sec. 2102(1), al referirse a reglamentos internos que no afectan los derechos del "público en general", se refiere a reglamentos internos de una agencia que únicamente afectan a los empleados de la misma; *no* se refiere dicha excepción, dicho de manera aun más sencilla, a reglamentos de una agencia que afectan a otros empleados públicos de una segunda agencia.

El reglamento aquí en controversia afecta derechos de otras personas que no trabajan en la agencia promulgadora del mismo. Esto es, el·peticionario Juan Aubín —que *no* es empleado de la Oficina del Contralor— *cualifica como un "tercero" frente a la referida Oficina.*